## 4381. HYER *v.* HOLMES & COMPANY.

1. The court did not err in overruling the demurrers to the defendant's answer after the answer had been amended.
2. Either party to a cause may, by proper amendment, conform his pleadings to the evidence which has been introduced, and after such amendment the court may properly refuse to rule out testimony, though it would originally have been irrelevant or incompetent. Under the amendment allowed by the court in this case, without objection, the oral evidence touching the written contract originally alleged in the petition was relevant and competent, and the court did not err in overruling the motion to exclude this testimony.
3. One who assumes the burden of proof is only required to carry the burden of evidence until his contention has been prima facie established. The position of the "burden of proof" is determined by the pleadings, and as to this the burden of proof is unchanging; once imposed it remains. But the burden of testimony may be shifted and alternate between the parties according to the contingencies and crises of the trial.
4. A trial judge, in declaring that the party having the burden of evidence with regard to a particular fact has so discharged it that the burden of evidence has been shifted to his opponent, may properly consider the question as to which party has within his possession or control the more precise and conclusive knowledge as to the particular fact or facts in issue. Generally, facts that are peculiarly within the knowledge of a party must be proved by him, and a judge may more promptly discharge a litigant from his burden of evidence either when knowledge as to the proposition is peculiarly within the power of his opponent, or where the proposition is a negative one. Where the means of proving a negative are not within the power of one of the parties, but all the proof on the subject is within the control of the other, who, if the negative is not true, can disprove it at once, the truth of the negative averment can be presumed from the fact that the party who has within his power proof (if such exists) that the negative is not true still withholds or does not produce such proof. In other words, in such a case, the burden of proof is thrown upon the party having the power to produce such proof, to prove the affirmative against the negative averment.

5. It is not error to allow an amendment to the pleadings, after the close of the evidence and the argument of counsel, if the amendment is supported by evidence and is not otherwise objectionable for such reason as the introduction of new parties or a new cause of action, or the like.

6. A motion for continuance based upon the ground of surprise is defective unless the court is advised in the showing for continuance wherein and in what respect the movant is not prepared to proceed with the trial, and how or why he will be better prepared to meet the issue in the event the court should continue the case upon his motion.

DECIDED JUNE 25, 1913.

Complaint; from city court of Moultrie—Judge Thomas presiding. July 12, 1912.

*E. L. Bryan,* for plaintiff.

*T. H. Parker, Shipp & Kline,* for defendant.

RUSSELL, J. The plaintiff in error brought suit against C. E. Holmes & Co. upon a note for $3,500 and interest and attorney's fees. The note was payable to the order of the People's Bank of Pensacola, Florida, and in the course of the trial the petition was amended to show that it had been duly transferred and assigned to the plaintiff. The firm of C. E. Holmes & Co. was composed of several persons, and both the partnership and the individuals composing it were sued, but C. E. Holmes was the only partner served. Several amendments to his original answer, which were presented to and allowed by the court, are made the subject of exception. As set out in his answer, as finally amended, his defense rested upon the proposition that he had sold to Hyer, the plaintiff, his fourth interest in the firm of C. E. Holmes & Co., upon Hyer's agreement to pay him $10,000 for his interest and also to pay the debts of the firm, provided they did not exceed $35,000; that of these partnership debts the sum of $6,000 was due to Holmes himself, as was also the note in suit, and that he not only did not owe the note for $3,500, but the plaintiff owed him $10,000, according to the terms of the contract of sale. The jury sustained his plea, and returned a verdict in his favor and against the plaintiff for $10,000 principal, $3,500 interest to date, and costs of the suit. This writ of error presents for review certain rulings to which exceptions were taken pendente lite, and also the judgment overruling the motion for a new trial.

There can be no question that the evidence authorized the finding of the jury; and, in fact, this is unquestioned in the brief of counsel for the plaintiff in error. It is insisted, however, that the verdict

is wholly unwarranted because it depends upon and was induced by errors of the court in allowing amendments to the defendant's answer, and in admitting and refusing to exclude evidence which the plaintiff in error contends was illegal. Error is also assigned upon the refusal of the court to continue the case on the ground of surprise, and upon the allowance of an amendment to the answer after the evidence had been closed and the argument in the case concluded. Furthermore, it is strongly insisted that since the defendant assumed the burden of proof, the court erred in holding, under the circumstances of the case, that it was not incumbent upon the defendant to prove that Hyer had not paid any more than $35,000 of the debts of the partnership, as he had contracted to do. We will first consider the assignments of error relating to the amendments to the answer.

1. On February 15, 1912, the court permitted the defendant C. E. Holmes to amend his answer by setting up that at the time he delivered the property which consisted of his fourth interest in the firm of C. E. Holmes & Co. to Hyer and Gonzales, he delivered to them all of his books of account, and other evidences of indebtedness by Holmes & Co., and that since then he had no access to those books and was unable to furnish a list of the creditors of Holmes & Co. The amendment alleged also that the contract by which Hyer and Gonzales assumed to pay all the debts of Holmes & Co., including the note sued on, was in writing and executed in duplicate, but that the defendant had lost his copy of the contract and it was impossible for him to attach a copy of the contract to the answer, but that at the time of the sale the principal creditor of Holmes & Co. was the firm of J. P. Williams & Co., which firm held a security deed to all of the real estate of Holmes & Co., and that the defendant delivered to Hyer and Gonzales a written order directing J. P. Williams & Co. to execute and deliver to Hyer and Gonzales title thereto; and that upon this instrument they secured and received from Williams & Co. the defendant's fourth interest in the partnership property. In the amendment the note which was the basis of the suit was stated to be one of the debts of the firm of Holmes & Co. which Hyer and Gonzales agreed to pay; and it was also alleged that the plaintiff had not paid the defendant a debt of $6,000, included in the indebtedness of Holmes & Co., which the purchasers of his interest assumed. By further

amendment the defendant struck that portion of his original plea in which he prayed recoupment and judgment against the plaintiff for $6,000, as evidenced by six notes of $1,000 each, alleged to be owned by the Citizens Bank of Moultrie.

In the demurrer to this amendment it was insisted that inasmuch as the defendant had assumed the burden of proof, he should be required to attach a list of the items of indebtedness, and also to attach a copy of the deed alleged by the defendant to have been executed by himself to the plaintiff and C. P. Gonzales, together with a copy of the alleged agreement to assume and pay certain indebtedness of C. E. Holmes & Co. We think the court was right in overruling this demurrer. A demurrer to the answer before amendment, based upon several grounds, had been overruled, but no exceptions to this ruling had been preserved. The only question then presented to the court was whether the court should require the defendant (who, according to the allegations of the original answer, had in his possession none of the documentary evidence which the plaintiff asked to be set out) to attach copies thereof, upon pain of being dismissed if he failed to do so (and that too when it affirmatively appeared that this evidence was peculiarly within the knowledge and power of the plaintiff), merely because in his original answer the defendant had assumed the burden of proof. Even if the question can be raised by demurrer, the court, under the allegations in the original answer, did not err in allowing these amendments, because no exceptions were filed to the order overruling the demurrer to the original answer, and that ruling was res judicata. Consequently, if the amendment merely amplified the statement of the cause of action set up in the original answer, without introducing a new cause of action or any additional party, it would be germane and allowable.

The propriety of the court's ruling upon the burden of proof can not be tested by demurrer, but even if it could, there is no merit in the demurrer, so far as it relates to this point; for the reason that in the original answer it is alleged that the plaintiff was in any event to pay as much as $35,000 of the debts of C. E. Holmes & Co.; and a list of the creditors, even if it were admitted to be correct, would not supply proof that any of the obligations due these creditors, or as much of them as might amount to $35,000, had in fact been paid, or were not paid, by the plaintiff.

As to the contention that a copy of the documents referred to should be attached to the answer, it is only necessary to say that it is alleged in the answer that the defendant's copies had been lost,—precluding the possibility of his doing more than setting out the substance of the contract,—and it was alleged that a duplicate copy of the contract was in the possession of the opposite party and beyond the jurisdiction of this State,—that is, in the State of Florida.

2. As to the other amendment, it will also be necessary to deal somewhat with the evidence, because some of the amendments were allowed after the introduction of testimony, and their propriety depends upon the pertinency of the testimony to the issue. As originally pleaded, the defense of recoupment was based upon the contract alleged to have been made with Hyer, and in writing. As amended the contract was an oral contract made with Hyer contemporaneously with and as an inducement to a written contract by which the property in question was nominally sold to one C. P. Gonzales. But there was no real change in the statement of the cause of action, and no new party was introduced. Though the original petition set forth that the contract was between Hyer and the defendant Holmes, and the contract, when introduced, showed that the parties really mentioned in the writing were Holmes and Gonzales (instead of Hyer), still parol evidence to the effect that the contract was in fact made between Hyer and Holmes, and that at Hyer's instance, for reasons sufficient to himself, Gonzales's name was used instead of his own, was admissible. Of course, the rule is well settled that parol evidence is generally inadmissible to vary the terms of a contract, but it was for the jury to say whether or not the substitution of Gonzales's name for that of Hyer's, in the contract, and at Hyer's request, was fraudulent, and the suggested substitution made with the view of enabling Hyer to evade his obligation and avoid paying for the property he had purchased from Holmes. There were introduced in evidence five notes for $1,000 each, signed by J. W. Hyer as trustee, which it was testified were a part of the consideration of the contract of purchase; and the contract of sale signed by Holmes was transferred by Gonzales to Hyer within a few days after its execution, and, in pursuance of the contract, J. P. Williams & Co. conveyed, not to Gonzales but to Hyer, Holmes's fourth interest in 16,912 acres of land in Santa

Rosa county, Florida, with sawmills, eight miles of railroad, and the appurtenant engine and rolling stock. It is undisputed, in the evidence, that Hyer got Holmes's fourth interest in the partnership assets of C. E. Holmes & Co. It is undisputed that he, and not Gonzales, carried on all the negotiations leading up to the purchase and its consummation. According to the defendant's contention, the larger portion of the purchase-price had not been paid to him, and the note upon which Hyer was suing him should have been paid by Hyer and the indebtedness discharged, instead of being transferred to Hyer as the purchaser thereof. It was not denied, even by Hyer himself, that he was to pay as much as $35,000 of the debts of Holmes & Co., as part of the consideration of his purchase from Holmes; and it appeared, from the testimony, that immediately after Hyer's purchase, all of the books of the firm of C. E. Holmes &- Co. were turned over to Hyer, and that they were not afterwards seen by Holmes. It seems to us that this testimony was relevant and was properly admitted in order that the jury might be able to do justice in the case, and that it is immaterial whether the amendments or the evidence came first. If the court, upon the statement of counsel as to what he expected to prove, allowed the amendments setting up the facts substantially as above, then the court did not err in admitting the evidence in support of the amendments, or in refusing to exclude it upon motion-of the plaintiff. If the evidence was first admitted, then the amendments were proper, because they conformed to the evidence and yet did not introduce a new cause of action.

3. One of the main contentions of the plaintiff is that, even conceding that there was a contract such as was alleged by the defendant, and that by its provisions the plaintiff was bound to pay the indebtedness of Holmes & Co. to the extent of $35,000, nevertheless, since the defendant had assumed the burden of proof, it devolved upon the defendant to prove that the plaintiff had not in fact paid that amount. In other words, the insistence of the plaintiff is that the defendant, having assumed the burden of proof, failed to carry that burden unless he established a negative, even though the proof upon the subject was alleged and shown to be peculiarly within the power of the plaintiff and beyond the control of the defendant. The point was raised first by demurrer, and then by motion to exclude the testimony in behalf of the defendant,

and lastly it was presented in the motion for new trial. Nothing is better settled than that where one who is sued upon a promissory note assumes the burden of proof (and thus admits that the plaintiff is entitled to recover unless he establishes the defense upon which he relies), he must establish his affirmative defense by a preponderance of evidence, just as the plaintiff is required to do in a case in which no admissions are made. But the terms "burden of proof" and "burden of evidence" are not synonymous. The burden of evidence may shift, but the burden of proof, either when imposed by law or when voluntarily assumed, is unchanging. *Martin* v. *Monroe,* 130 *Ga.* 79 (60 S. E. 253). The legal obligation of carrying the burden can only be fulfilled by producing such preponderance of evidence as to satisfy the minds of the jury when the evidence has finally been concluded. However, just as the defendant may admit a prima facie case in behalf of the plaintiff upon whom the law originally places the burden of making out his case, so the defendant may make out a prima facie case in rebuttal of the plaintiff's prima facie case, equally strong; and since the plaintiff can not recover although he may have established a prima facie case, either by evidence or admission, unless the evidence in his favor preponderates, when the defendant has made out a prima facie case as strong in his behalf as that admitted in behalf of the plaintiff, it would seem that the burden of evidence would be shifted, and the plaintiff would be required to produce such additional evidence in support of his prima facie case as would overbalance the prima facie defense of the defendant, before the plaintiff would be entitled to recover.

The term "burden of proof" means that the burden is coextensive with the legal proposition upon which the case rests, and it applies to every fact which is essential to or necessarily involved in that proposition. It does not apply to facts relied on in defense to establish an independent proposition, however inconsistent such proposition may be with that on which the plaintiff's case depends. If the defendant furnish proof of an independent proposition which is inconsistent with that on which the plaintiff's case rests, the burden is on the plaintiff, not to disprove those particular facts, nor the proposition which they tend to establish, but to maintain the proposition on which his own case rests, notwithstanding the adverse testimony and the whole evidence in the case. *Wilder* v. *Coles,*

100 Mass. 487, 490. "There is a manifest. distinction between the 'burden of evidence' and the 'burden of proof.' How far the burden of evidence may bear upon a party to litigation is usually more for the jury to determine, as a matter of fact, than for the ruling of the court as a matter of law. Generally the burden of proof upon any affirmative proposition necessary to be established as the foundation of a suit does not shift from plaintiff to defendant, while the burden of evidence, or of the weight or preponderance of evidence, or the burden of explanation, may shift from one side to the other, according to the testimony." Buswell *v.* Fuller, 89 Maine, 600 (36 Atl. 1059). So also in the case of Feurt *v.* Ambrose, 34 Mo. App. 360, 366, it was held that "The 'burden of proof' means the burden of establishing a case, and the well-settled law is that such burden remains unchangeable throughout the entire case, exactly where the pleadings originally placed it. The burden of proof in the sense of the 'burden of the evidence' may shift constantly, as the evidence is introduced by one side or the other,—as one scale preponderates over its fellow; but, when all the evidence is in, it is legally necessary to action by the tribunal that the final balance be one way. This necessity does not at any time shift, but remains constantly throughout the trial on one of the parties alone, to wit, on him who had the affirmative. This is the burden of establishing—the burden of proof."

The burden of proof is a rule of law, the burden or weight of the evidence is one of fact,—the former belongs to the court, the other to the jury. "Whether the 'burden of proof' as to a certain fact is on the plaintiff or defendant the court will determine upon the settled rules of evidence, one of which is that the burden of maintaining any issue of fact rests upon him who, from the nature and character of the fact, has, or might have, peculiar information thereon." Little Pittsburg Co. *v.* Little Chief Co., 11 Colo. 223 (17 Pac. 760, 7 Am. St. R. 226). We will consider the facts in the light of this rule. The defendant Holmes began the case with both the burden of proof and the burden of evidence resting upon him. It devolved upon him to prove the execution of the contract and the delivery of the property as alleged in the plea. One of the stipulations of the contract was that the plaintiff should pay debts of the firm to the extent of $35,000. At this point the question arises as to whether the defendant was compelled to prove not

only that the plaintiff contracted to pay the $35,000 of debts, including the note upon which the plaintiff sued, but also whether the plaintiff had complied with his contract, by paying the indebtedness, or had failed to comply therewith,—a fact which must rest peculiarly within the knowledge of the plaintiff, and not the defendant. It was certainly not necessary for Holmes to show what amount was due by the firm at the date of the sale; for the reason (if there were no other) that it affirmatively appeared that all the records of this indebtedness were in the possession of the plaintiff and in the State of Florida, beyond the jurisdiction of the court. And we do not think that the trial judge erred, under the peculiar circumstances of the case, in holding that the defendant's prima facie case was sufficient, without putting the defendant to the necessity of attempting to prove a negative, as to the payments, the proof of which necessarily rested peculiarly within the knowledge of his opponent.

The strict meaning of the term "onus probandi" is that if the party who has the burden of proof does not offer any evidence in the cause, the issue must be found against him. 1 Words & Phrases, 905. When Holmes showed that he had fully complied with the contract to which he testified, the burden of evidence shifted, and it devolved upon Hyer to submit testimony showing that he had complied with the cross-obligations of the contract. As pointed out in the case of Little Pittsburg Co. *v.* Little Chief Co., supra, this was a subsidiary fact, the establishment of which rested upon him; because, from the very nature and character of the fact, he should have had peculiar evidence upon the subject. C. E. Holmes & Co. might have owed more than $35,000, and yet Hyer might not have paid a cent of it, though bound, according to the testimony of the defendant, to pay the debts of C. E. Holmes & Co. up to at least $35,000 and more, before he could be relieved from the payment of $4,000 retained by him to meet Holmes's share of any indebtedness in excess of $35,000, and $6,000 due C. E. Holmes on the books of the company. The defendant showed that Hyer had not paid all the indebtedness, by testifying that Hyer had never paid him the $6,000 which C. E. Holmes & Co. were indebted to him (Holmes), nor the note for $3,500 which was the subject-matter of the suit, and which, according to the defendant's

testimony, should have been extinguished by Hyer's payment to the People's Bank.

In 2 Chamberlayne's Modern Evidence, § 969, the rule is announced as follows: "The incidence of the burden of evidence at the beginning of the trial is upon the party having the burden of proof, i. e., upon the actor, until he shall have established a prima facie case in his favor as to the truth of every material allegation embraced in his affirmative case. In discharging this burden of evidence it is not absolutely necessary that all essential facts should be established directly by the testimony of witnesses, the statement of documents, or the perception of the tribunal. The party having the burden of evidence may establish his prima facie case entirely by adducing evidence. As soon as the party having the burden of proof shows these facts the burden of evidence, so far as he is concerned, is discharged and is transferred to his adversary, and remains with him so long as the actor's original case continues to retain its prima facie quality. The position of the burden of proof in the meantime stands in no way affected." Likewise, in § 971 of the same work, the author says: "The burden of evidence may, and frequently does, vibrate between the parties, and is a necessary and usual incident of any contest to be determined by the use of the facts, as the establishment of a prima facie case presents to a party the alternative of producing evidence to meet it or of being defeated in the action."

Under the contract established by the testimony of the defendant, if it was credible, Hyer was bound to prove that he had paid the $35,000 indebtedness stipulated in the contract, and $16,000 in addition, in order to defeat Holmes's right to recover. As already stated, no matter what the debts of Holmes & Co. amounted to, Hyer may not have paid any of them, and the facts regarding any payments made rested peculiarly within his (Hyer's) knowledge.

Having proved the contract and the obligation of Hyer to pay the debts of Holmes' & Co., the court properly held that it was necessary for Hyer to prove that he had made the payments in compliance with his obligation so to do, or that otherwise he would have failed to carry the burden by law devolving upon him as a plaintiff, in spite of the admission of the defendant that, prima facie, he was entitled to recover. Furthermore, the only debts which could fall within the provisions of the contract, and which were shown

to have been in existence, were both of them unpaid, according to the testimony of the defendant. If there is any presumption, either way, as to the existence of any other debts, it was to be presumed that there were no others, because the books of account which contained the statement of the indebtedness due by C. E. Holmes & Co. had been delivered to Hyer before the consummation of the contract. Hyer had ample opportunity to ascertain the amount of the indebtedness due by C. E. Holmes & Co., because these books showed all the accounts of all the creditors, including that of C. E. Holmes (who had a credit of $6,000). Hyer was served with notice to produce these books, and, according to the testimony, they were in the State of Florida, beyond the jurisdiction of the court, and their production could not be compelled. In Chamberlayne's Modern Evidence (§ 978 et seq.) the author well says that in considering the amount of evidence necessary to shift the burden of proof, the court looks to the opportunities of knowledge with respect to the fact to be proved which may be possessed by the parties respectively. "It is often said that facts which are especially within the knowledge of a party must be proved by him. This rule is especially applied where the fact particularly well known to the other side presents the further difficulty in the way of adequate proof that it is negative. Under these circumstances it occurs with special frequency that the other party is called upon to prove it." "It being within the administrative power of the court to decide at what point a prima facie case has been established, i. e., when the burden of evidence has been discharged, the presiding judge may well bear constantly in mind the relative ability of the parties to make proof upon a given point." If it is within the administrative power of the court to decide at what point a defendant who is endeavoring to set up a cross-action has established a prima facie case, then it can not be said the judge in the present case erred in holding that the defendant was not required to prove that the plaintiff had not paid as much as $35,000 of the debts of C. E. Holmes & Co., for "The burden of proof may be shifted when sufficient facts are established to raise a strong presumption in favor of the negative." DeLachaise v. Maginnis, 44 La. Ann. 1043 (11 So. 715). It is often impossible to prove a negative, and for this reason the degree of proof required to support a negative proposition and to shift the burden must vary, according to the circumstances of the case. Often slight evidence

will be sufficient to shift the burden to the party having the greatest opportunity of knowledge concerning the facts in question. The defendant in his answer claimed that the plaintiff had not paid the $35,000 of debts; he supported this by his testimony that two of the debts, amounting to nearly $10,000, had not been paid. He showed that proof which would rebut his claim lay peculiarly within the knowledge and power of the plaintiff. The court did not err in adjudging that at that point the defendant had established a prima facie case. After all, the necessity of the plaintiff's producing the proof is settled by our own code, for "Where a party has evidence in his power and within his reach, by which he may repel a claim or charge against him, and omits to produce it, or having more certain or more satisfactory evidence in his power, relies on that which is of a weaker or inferior nature, a presumption arises that the charge or claim is well founded." Civil Code, § 5749.

5. One of the amendments, to the allowance of which exception is taken, was presented after the conclusion of the evidence and the argument. The amendment appears to be pertinent to the evidence and germane to the issue. It is well settled that an amendment which meets these requirements is permissible at any stage of the case prior to the rendition of the verdict.

6. In the motion for a new trial error is assigned upon the refusal of the court to continue the case, upon the ground of surprise. The exact exception is as follows: "Because, after the allowance of the amendment set forth in the 9th ground of this amended motion [movant] pleaded surprise and moved the court to continue the case, which plea and motion the court then and there overruled, which ruling of the court movant contends was improper and illegal." If, as a matter of fact, the motion to continue, based upon the ground of surprise, was properly made, then the assignment of error is not sufficiently full to present anything for our consideration. On the other hand, if the ground of the motion contains a true recital of what occurred, the court very properly overruled the motion to continue; because a motion for continuance, based upon the ground of surprise, must state how the party who asks a continuance is surprised. In other words, it must be made to appear to the court that there is some reason on account of which the party is less prepared to proceed with the trial than he would probably be if the motion to continue the case were granted.

The evidence fully authorized the finding in favor of the defendant, and the trial judge did not err, either in the allowance of the amendments, the admission of the evidence, the refusal to continue the case, or in refusing a new trial.          *Judgment affirmed.*