23873. MUTUAL LIFE INSURANCE COMPANY *v.* BURSON.

STEPHENS, J. 1. An allegation in the petition in a suit to recover on a life-insurance policy, that the gun which deceased had in his hand was accidentally discharged and that the load of shot went into his left chest, causing instant death, is sufficient as showing how the death of the deceased resulted from bodily injury received and effected solely through external, violent, and accidental means. The court did not err in overruling the demurrer on the ground that the allegation was defective in that it did not show "how the gun in the hand of" the deceased "was accidently discharged."

2. In a suit to recover upon a life-insurance policy for a double indemnity which is payable where the insured's death was caused through external and accidental means, but which is not payable where the death of the insured was caused from his own act, where the insurance company defends upon the ground that the insured's death was caused by suicide, the burden of proof is upon the plaintiff to show by a preponderance of evidence that the death of the insured was caused by external, violent, or accidental means, within the terms and provisions of the policy. The burden of proof which rests upon the plaintiff to show that the death of the insured was caused by external, violent and accidental means and that the defendant is liable under the terms of the policy is aided by the presumption that the death of the insured was not due to suicide. Where there is evidence that the cause of death was from external, violent, or accidental means and the evidence is conflicting as to whether death was due to accident or to suicide, and the evidence is consistent with the reasonable hypothesis that the death was due to accident rather than to suicide, there is the presumption that the cause of death was accidental and was not caused by suicide. Travelers Ins. Co. v. McConkey, 127 U. S. 661 (8 Sup. Ct. 1360, 32 L. ed. 308); Supreme Tent Knights of Maccabees v. King, 142 Fed. 678; N. Y. Life Ins. Co. v. Bradshaw, 2 Fed. (2d) 457; Mutual Life Ins. Co. v. Hatten, 17 Fed. (2d) 889; Laessig v. Travelers Protective Asso., 169 Mo. 272 (69 S. W. 469); 1 C. J. 496. Whether the death was due to accidental means or suicide is a question of fact for a jury.

3. Upon the trial of such a suit, where the evidence authorized the inference that the death of the insured was due to violent or accidental means, in that death was caused from a gunshot wound, and where the evidence authorized conflicting inferences as to whether the death was due to accidental means or to suicide, and the evidence was consistent with the reasonable hypothesis that death was caused by accidental means rather than from suicide, it was not error, on the ground that the presumption does not obtain except where the cause of death is unknown, for the court to instruct the jury that where the death of a person is shown, the law does not presume that such death was caused by suicide, but presumes that it was caused from accidental or natural causes. It was also not error for the court to charge that a conflict in the testimony does not destroy the presumption against suicide.

4. An excerpt from the charge of the court in the language of section 5746 of the Civil Code of 1910, "that the burden of proof generally lies upon the party asserting or affirming a fact," etc., contained a correct principle of law applicable to the issues made by the pleadings and the evidence, and was not subject to the objection that the court in giving this language in charge, erred in not instructing the jury that the burden of proof rested upon the plaintiff to establish the allegations of the petition that the death of the insured resulted directly from bodily injury independently and exclusively of all other means, and that such bodily injury was effected through external, violent, and accidental means.

5. It was not error, in the absence of a special request, for the court to fail to charge that the burden of proof rested upon the plaintiff to establish by a preponderance of the evidence the allegations which the

defendant contends were essential to the plaintiff's right to recover. See *Hyer* v. *Holmes*, 12 *Ga, App.* 837 (79 S. E. 58); *Masonic Relief Asso.* v. *Hicks*, 47 *Ga. App.* 499 (171 S. E. 215); Fidelity & Casualty Co. *v.* Weise, 182 Ill. 496 (55 N. E. 540); Whitlatch *v.* Fidelity & Casualty Co., 149 N. Y. 45 (43 N. E. 405).

6. Since where the presumption against suicide exists, as in this case, this presumption must be rebutted and overcome by the evidence or from inferences deducible from the evidence, it was not error, on the ground that the charge placed an unrequired burden upon the defendant, for the court to charge that if the evidence points equally and indifferently to the theory of death by accident, or to death by a wound intentionally self-inflicted, the theory of death by accident is to be adopted rather than that of suicide. *Travelers Insurance Co.* v. *Sheppard*, 85 *Ga.* 751 (12 S. E. 18); *New York Life Insurance Co.* v. *King*, 28 *Ga. App.* 607 (112 S. E. 383); *Standard Accident Insurance Co.* v. *Kiker*, 45 *Ga. App.* 706 (165 S. E. 850).

7. A charge that where the physical facts and the surrounding circumstances left the question of suicide in doubt, the plaintiff could recover on the presumption of accidental death, was not error upon the ground that it excluded from the jury a consideration of all the evidence. A consideration of the physical facts and the circumstances is a consideration of all the evidence.

8. The charge that a conflict in the evidence would not destroy the presumption against suicide, but that the presumption remains throughout the case, and is overcome only by evidence which excludes with reasonable certainty any hypothesis or theory of death by accident, was not error upon the ground that it excluded from the jury the question whether the presumption against suicide had been overcome, where the court elsewhere instructed the jury that the amount of evidence sufficient to overcome the presumption that death was from natural causes or accident was purely a question for the jury to determine.

9. Testimony was not inadmissible, as a conclusion of the witness, that he had observed, at the place where the body of the deceased was found, some stove wood scattered around, some pine limbs, and a rock, over which a person could stumble or trip. The evidence, if it is an opinion of the witness, is based upon the fact of the character and nature of the objects observed, and is no more than a description of a situation coming under the witness' observation. It is not inadmissible as being an opinion of the witness without any basis in fact. Where the situation of the ground at the place where the deceased's body was found was as described by the witnesses, and where inferably the deceased was killed by a gunshot wound in his side, inflicted by his own gun, which was lying within his reach by his body, the evidence that a person could have stumbled or tripped over the objects which the witnesses described as being on the ground is not irrelevant and inadmissible because there is no evidence that the deceased tripped or stumbled at this place.

10. Whether or not it was error to exclude the proffered testimony of a witness, who was not a physician or surgeon but a druggist, and who had examined the dead body of the deceased, that the gun which killed the deceased was "mighty close to the body when it was fired, or else

the hole would have been larger than it was," it is not such as would demand a setting aside of the verdict and giving a new trial to the defendant, where the witness was permitted to testify substantially to the same effect where in his testimony which was unobjected to he stated that he had some experience in handling guns, and if the gun is held very close up against the flesh there will not be a great deal of powder burns about the wound, but if the gun is held off any distance the wound will be bigger, and it would make a bigger hole, that the shot will spread out when the gun is held any distance from the target, and where elsewhere there was ample evidence tending to show by a preponderance of the evidence that the gun which inflicted the wound on the body of the deceased which caused his death was close to the body.

11. The testimony of a wife who had been with her husband all day prior to the time of his death, that during that time she saw nothing wrong with him, is not inadmissible as being a conclusion, since necessarily the facts and circumstances upon which the witness bases this opinion are such that they can not be detailed and described so as to enable any one but the witness herself to form an intelligent conclusion therefrom. It was not error to admit this testimony. Even if the testimony was inadmissible, its admission was harmless to the defendant and could not have influenced the verdict. *Mayor &c. of Milledgeville* v. *Wood*, 114 *Ga.* 370, 373 (40 S. E. 239).

12. Where by a statutory enactment evidence which is in the nature of hearsay, and is otherwise inadmissible as possessing no probative value, is given the force and effect of direct and positive testimony in the courts, and is sufficient as prima facie evidence of the facts stated, under certain conditions as provided in the statute, the provisions of the statute must be complied with as a condition precedent to the admissibility of the evidence for the purposes provided. Where by an act approved August 17, 1914 (Ga. L. 1914, p. 157 et seq.), it is provided that there shall be, under the State Board of Health, an official designated as the State Registrar of Vital Statistics, and that under prescribed conditions a coroner or other proper officer whose duty it is to hold inquests on the body of any deceased person shall make a certificate "as to the means of death and whether (probably) accidental, suicidal or homicidal," and, where this certificate is filed with the State Registrar of Vital Statistics, that any "copy of the record of . . death when properly certified by the State Registrar shall be prima facie evidence in all courts and places of facts therein stated," and where an act approved August 22, 1927 (Ga. L. 1927, p. 353 et seq.), which is largely a re-enactment of the act of 1914, contains the same provisions, a death certificate required by virtue of the provisions of these acts, which makes the statements therein as to the cause of death prima facie evidence in the courts of this State of the facts therein stated, is not admissible in evidence in any court unless certified to by the State Registrar as in these acts provided, or by some person or persons upon whom the law confers such authority. Where the State Board of Health, as created under existing laws, and the powers, duties, and functions of the Board of Health are transferred to and vested in the "Department of Public Health" under the management and control of a "director" as provided in the act approved August 28, 1931 (Ga.

L. 1931, pp. 11-12, §§ 14-18), and where among the powers, duties and functions of the Board of Health is the appointment of officers and assistants necessary to the proper administration of the duties and functions of the Board of Health, and where under the act it is provided that the Department of Public Health may, under the direction and supervision of the director, employ clerks and assistants, and the office of State Registrar of Vital Statistics is abolished and its powers, duties and functions transferred to the Department of Public Health, the powers and duties of the State Registrar of Vital Statistics theretofore existing, to certify to copies of death certificates and by so doing render them prima facie evidence in the courts of the State as to the facts therein stated, is conferred generally upon the Department of Public Health, and not upon the director or any official clerk or assistant in the department; and since no provision is made in the act by which this power can be conferred upon any official, employee, or clerk in the Department of Public Health, no power is by this act vested in the director of the Department of Public Health to certify as to any death certificate in the department, and thereby give to such certificate, wherein it states that the cause of death of a person found dead was suicide, the force and effect of prima facie evidence of the facts therein stated in the courts of this State. Although the Department of Public Health, as created by the act of 1931, was abolished by an act approved March 18, 1933 (Ga. L. 1933, pp. 7-12), and recreated as a department of the State government to be known as the Department of Public Health under the management and control of the Board of Health, and the act provided that the office of State Registrar of Vital Statistics is "abolished, and the powers, duties, and functions of said office are hereby transferred to and vested in said Board of Health," and that the Board of Health shall elect a director of the Department of Public Health and confer upon him such duties and powers as the Board of Health deems proper, this act does not confer upon the director of the Department of Public Health any power to certify to the record of any death certificate and thereby give to such certificate the force and effect of evidence as to the facts therein stated. Assuming, however, that the Board of Health, under the power given it by the act approved March 18, 1933, to confer upon the director of the Department of Public Health such duties and powers as the board deems proper, confers upon the board the power to give to the director of the Department of Public Health the power to make such certificates and thereby give to them the force and effect of evidence as to the facts therein stated as was provided in such certificates when certified to by the State Registrar of Vital Statistics under the acts of 1914 and 1927, it should, when such a certificate certified to by him is offered in evidence in a court of this State, before it is entitled to admission, be made to appear that the power to make such certificate and to give it the force and effect of evidence as to the facts therein stated had in fact been conferred upon him by the Board of Health. Where no evidence is offered that the director of the Department of Public Health had had conferred upon him the power to make such certificate, the court did not err in excluding from evidence a certificate wherein it was stated by C. B. Almand, coroner, physician, that the death of the plaintiff's husband was

due to "suicide by shotgun through heart," which was certified to as of the date of April 6, 1933, by T. F. Abercrombie, Director Department of Public Health. Besides, it is a matter of public record that on April 6, 1933, the Board of Health had not been established by the appointment of a board under the act of 1933, and the Board of Health at the time could not have conferred any authority on the director.

13. The court did not abuse its discretion in overruling the defendant's motion to declare a mistrial upon the ground of certain alleged prejudicial remarks made by counsel for plaintiff when addressing the jury, to the effect that the world war was fought on the idea of making the world safe for democracy when in fact it was fought to make the world safe for the international bankers, railroads, and insurance companies who had invested funds in foreign securities, and that this brought on the war, and that "in order to protect these securities we sent our boys like Jim Burson [the deceased] across the sea to be made cannon fodder of," where the court thereafter instructed the jury that the remarks of counsel were withdrawn from the jury's consideration and that they should not consider them, that the remarks about soldiers fighting and the war being brought on by any person and being fought or not fought for democracy to protect people formed no part of the case, and instructed plaintiff's counsel by name not to repeat the remarks, but to stay inside the evidence. It thus appeared that the court complied with his mandatory duties as prescribed by section 4957 of the Civil Code of 1910, both by rebuking the counsel for the use of the remarks complained of, and by properly instructing the jury in regard thereto, which having been done, this court is unable to hold as a matter of law that the judge thereafter abused the discretion vested in him as to whether he would or would not grant a mistrial.

14. The evidence does not conclusively establish as a matter of law that the death of the plaintiff's husband was the result of suicide.

15. The evidence authorized the verdict for the plaintiff, and no error appears. *Judgment affirmed. Jenkins, P. J., and Sutton, J., concurs.*

DECIDED MARCH 1, 1935.

*Bryan, Middlebrooks & Carter, B. B. Zellars,* and *Robert L. Russell,* for plaintiff in error.

*J. H. & Emmett Skelton, Carey Skelton, A. S. Skelton,* contra.