26877. NEW YORK LIFE INSURANCE COMPANY v. ITTNER.

90

DECIDED DECEMBER 3, 1938.

*George L. Sabados, Bryan, Middlebrooks & Carter,* for plaintiff in error. .

*Bennet & Peacock, Farkas & Burt,* contra.

STEPHENS, P. J.   Mrs. Ethel Bush Ittner sued New York Life Insurance Company to recover an amount alleged to be due under a policy of life insurance issued to her husband, Arthur E. Ittner, by the defendant, in which the plaintiff was beneficiary, under the double-indemnity provision in the policy which provided for the payment of an indemnity upon receipt of due proof that the "death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent, and accidental cause," where such death occurred within ninety days after the injury was sustained.   In the petition it was alleged, among other things, that the death of the insured, which occurred on or about an alleged date, resulted directly and independently of all other causes from bodily injury effected solely through external, violent, and accidental causes, and that the death occurred within ninety days after the alleged injury was sustained. The defendant denied liability solely on the ground that the death of the plaintiff's husband did not result from bodily injury effected solely through external, violent, and accidental cause, but alleged specifically that the death resulted "from self-destruction, that is

to say, from suicide." The defendant denied that it had acted in bad faith in refusing to make payment to the plaintiff, and denied liability for the statutory penalty and attorney's fees prayed for.

Without going into the mass of evidence in detail, it is sufficient to state that it appears from the evidence that the plaintiff's husband, on or about the date alleged, was found dead at a lonely spot, with a number of wounds upon his body. There is no direct evidence tending to establish the cause of death. From the mass of evidence describing the nature of the wounds and the circumstances under which the body was found, and other evidence, including evidence that the deceased had on a former occasion attempted to kill himself, the inference was authorized that the death of the deceased was not due to an injury received from an accidental cause, but was due to his own suicidal act. It was contended by the plaintiff that the deceased met death from a violent, external injury resulting from accidental cause, that he was murdered, and that such was the proper inference to be drawn from the evidence. While the evidence clearly established that the death of the deceased was due to violence, it did not clearly and unequivocally establish whether it was due to external and accidental causes, such as murder, or whether it was due to the suicidal act of the deceased. The evidence would authorize either inference.

The jury found for the plaintiff in an amount representing the indemnity provided in the policy, and in an amount as damages and attorney's fees. The defendant moved for a new trial on the general grounds that the verdict was without evidence to support it and was contrary to law, and on the special grounds that the court erred in refusing to give in charge certain special written requests to charge, in giving certain matters in charge to the jury, and in rejecting certain evidence offered. There was also in the motion for new trial an exception to the refusal of the court to charge the jury that they would not be authorized to return a verdict for the plaintiff for damages or attorney's fees. To the judgment overruling the motion for new trial the defendant excepted. The defendant also excepted to the judgment as being illegal in so far as it provided for interest on the sum found in the verdict as principal where no amount was found in the verdict for interest. See a former report of this case in *New York Life Ins. Co.* v. *Ittner,* 54 *Ga. App.* 714 (188 S. E. 920).

■ In a suit to recover double indemnity, payable under a life-insurance policy, where the death of the insured is the result of bodily injury effected solely through external, violent, and accidental causes, the burden of proof is on the plaintiff to show that the death of the insured resulted in the manner described. *Mutual Life Ins. Co.* v. *Burson,* 50 *Ga. App.* 859 (179 S. E. 390). If the death of the insured was caused intentionally by his own act, i. e., if it was suicide, it was not effected by an accidental cause, and there could be no recovery. The burden of proof therefore is on the plaintiff to establish that the death was effected through an accidental cause, which of course, would preclude the cause of death as being by the voluntary act of the deceased, or suicidal. Upon proof of the death of the insured from a violent injury, without any evidence or further explanation as to cause of death, there is a presumption, as it is called, that the death was caused from accident and not from suicide. As stated by the Supreme Court of the United States in the recent case of New York Life Ins. Co. *v.* Gamer, 303 U. S. 161 (58 Sup. Ct. 500, 82 L. ed. 726, 114 A. L. R. 1218), "Upon the fact of violent death without more, the presumption, i. e., the applicable rule of law, required the inference of death by accident rather than by suicide." Thus far there seems to be no conflict in the authorities as to the conditions under which the presumption against death from suicide obtains. Where, however, in addition to proof of death from a violent cause, there is produced evidence tending to explain the cause of death, and from which it can be inferred by the jury that the death was suicidal, there seems to be in the authorities a conflict as to whether the presumption against suicide vanishes, or whether this presumption remains throughout the trial, and can be considered by the jury as having force and effect as evidence tending to establish that the death was accidental. It is universally held, however, that where the evidence is uncontradicted and conclusive that the death was self-inflicted, or was suicidal, the presumption against suicide is successfully rebutted or vanishes and does not prevail. As stated by the Supreme Court of this State in *Gem City Life Ins. Co.* v. *Stripling,* 176 *Ga.* 288, 290 (168 S. E. 20), "The presumption against it [suicide] is not conclusive and will vanish upon proof of physical facts clearly inconsistent therewith." In *New York Life Ins. Co.* v. *King,* 28 *Ga. App* 607, 610 (112 S. E. 383), it is

stated "that the presumption against suicide easily yields to physical facts clearly inconsistent with it." As stated by Judge Guerry in *Jefferson Standard L. Ins. Co.* v. *Bentley,* 55 *Ga. App.* 272, 282 (190 S. E. 50), "Such a presumption [i. e. the presumption against suicide] is merely a circumstantial inference selected by the law as the most rational hypothesis from given facts, and may or may not be rebutted according to the quality of evidence introduced. It yields to direct, positive, and uncontradicted evidence, i. e. it gives way to proved facts."

Chief Justice Bleckley in *Travelers Ins. Co.* v. *Sheppard,* 85 *Ga.* 751, 801, 802 (29) (12 S. E. 18), said: "The plaintiff must make out her case, but in so doing she can use the presumption against suicide which the law recognizes as arising out of the instincts of nature, one of which is the love of life. Where the fact of death is established, and the evidence points equally or indifferently to accident or suicide as the cause of it, the theory of accident rather than of suicide is to be adopted." This rule means, at least, that on proof of a violent death, where there is no evidence from which it can be inferred whether the death was accidental or suicidal, and, therefore, the evidence points equally either way, the so-called presumption that the death was not caused by suicide obtains and comes to the aid of the plaintiff, and the jury is authorized to find that the death was due to accident. In addition to this rule's application to such a situation, does it go further and have application to a situation where there is conflicting evidence as to whether the cause of death was accidental or suicidal, and the jury would be authorized to infer from the evidence either way, that is, that the cause of death was accidental, or that the cause of death was suicidal, and where the jury, after weighing all the evidence and determining its probative value, are in doubt and are unable to conclude from the evidence alone whether the cause of death was accidental or suicidal, does the presumption against suicide still prevail, and would the jury then be authorized on the basis of the presumption, to find that the death was caused from accident? In other words, is the rule laid down by Judge Bleckley applicable only where the evidence is such that no inference can be drawn therefrom as to whether the cause of death was accidental or suicidal, or does it also apply where the evidence, whether direct or circumstantial is such as to authorize conflicting inferences as to

whether the death was due to accident or to suicide, and the jury would be authorized to conclude from the evidence, whether the death was caused by accident or suicide? Under the latter conditions can it be said that the "evidence points equally or indifferently to accident or suicide" as the cause of death? We think not. The rule can only mean that where the inherent nature of the evidence is such that no inference one way or the other is authorized, i. e., where there is no evidence from which the jury could infer or conclude whether the death was accidental or suicidal, and the evidence therefore "points equally or indifferently to accident or suicide," the jury would be authorized to rely on the so-called presumption against suicide and find that the cause of death was accidental and not suicidal. Where, however, there is evidence, whether direct or circumstantial, from which the jury could infer that the death was not accidental but was suicidal, or the evidence is sufficient to authorize conflicting inferences as to whether the cause of death was by accident or suicide, does the presumption against suicide obtain, or has it vanished or disappeared, and is the jury authorized to determine the issue of the cause of death from the evidence alone, without the aid of the presumption against suicide?

There is a difference between circumstantial evidence which "points equally or indifferently to accident or suicide as to the cause" of death, and circumstantial evidence which authorizes a jury to infer that the death was due to either one of these causes, —that is, to infer that death was due to accident rather than suicide, or to infer that death was due to suicide rather than accident. Under evidence of the former character, the jury would be authorized to find nothing as to the cause of death, while under evidence of the latter character the jury would be able to determine the cause of death.

In *New York Life Ins. Co.* v. *King,* supra, it is stated by Judge Hill as follows: "But it is well established that the fact of death by accident is not to be established by conjecture or presumption, unless there is no evidence whatever as to the cause of death. The presumption of death by accident is prima facie only and is rebuttable, and, as said by several of the decisions, easily rebuttable by physical facts in evidence, and this presumption [i. e., the presumption against suicide] prevails only when the cause of death is unknown. It does not prevail where there are facts bearing upon

the question whether the death was intentional or accidental. When evidence is produced which is contrary to such a presumption, or the presumption is met by a conflicting presumption, it disappears, although the fact upon which it rests may still remain proper to be considered in arriving at a conclusion." It was held by the Supreme Court of the United States in the recently decided case of New York Life Ins. Co. v. Gamer, supra, which was a suit to recover under the double-indemnity clause in a life-insurance contract, where the burden of proof to show accident was on the plaintiff, that "the evidence being sufficient to sustain a finding that the death was not due to accident, there was no foundation of fact for the application of the presumption; and the case stood for decision by the jury upon the evidence unaffected by the rule that from the fact of violent death, there being nothing to show the contrary, accidental death will be presumed." It was held by the United States Circuit Court of Appeals for the fourth circuit, in Jefferson Standard Life Ins. Co. v. Clemmer, 79 Fed. (2d) 724 (103 A. L. R. 171), in a well-considered opinion for the court delivered by circuit Judge Soper, that the presumption against suicide is not evidence in an action on a life-insurance policy, but is a rule of law which requires the conclusion, in the event of an unexplained death by violence, that the death was not suicidal until credible evidence of self-destruction is offered, upon the production of which the presumption disappears and the trier of facts passes upon the issues in the usual way. This was a suit to recover under the double-indemnity clause where the burden of proof to show accidental death was upon the plaintiff. Numerous other decisions, both State and Federal, to the same effect could be cited. The overwhelming weight of authority, both by the courts and the text writers, is that on proof of facts which authorize a contrary inference, i. e., that the death was suicidal, the presumption vanishes, and the issue is to be determined on the evidence without the aid of the presumption. See the opinion of this court in *Georgia Ry. & P. Co.* v. *Shaw*, 40 *Ga. App.* 341 (149 S. E. 657). See also *Wittern* v. *American Surety Co.*, 46 *Ga. App.* 467 (168 S. E. 74).

As stated by Professor Thayer in the Storr's Lectures in 1896, before the law school of Yale University, "A presumption itself contributes no evidence, and has no probative quality. It is some-

times said that the presumption will tip the scale when the evidence is balanced. But, in truth, nothing tips the scale but evidence, and a presumption—being a legal rule or a legal conclusion —is not evidence. It may represent and spring from certain evidential facts and these facts may be put in the scale. But that is not putting in the presumption itself. A presumption may be called 'an instrument of proof' in the same sense that it determines from whom evidence shall come, and it may be called something 'in the nature of evidence,' for the same reason; or it may be called a substitute for evidence, and even 'evidence'—in the sense that it counts at the outset for evidence enough to make a prima facie case." It seems that under the correct rule the presumption against suicide disappears upon the production of evidence from which the jury may infer that the death was suicidal. While the presumption disappears "the fact upon which it [the presumption] rests may," as stated by Judge Hill in the opinion in *New York Life Ins. Co.* v. *King,* supra, "still remain proper to be considered in arriving at a conclusion." The fact on which the presumption against suicide rests is the fact, which is well known to every one, that an innate desire to live rather than die, is inherent in every human breast. This fact, whether it is called a presumption or not, is an axiomatic law of life, lodged instinctively in the minds of the jury, and needs no proof. Irrespective of the fact that the presumption against suicide may have vanished or disappeared on the production of evidence authorizing an inference of suicide, this fact of a desire to live may be considered by the jury, along with the evidence, in arriving at a conclusion on the issue of accidental or suicidal cause of death. This is not giving the effect of evidence to the so-called presumption against suicide, but is giving effect to the fact upon which the presumption rests.

The Supreme Court of Pennsylvania in Watkins v. Prudential Life Ins. Co., 315 Pa. 497 (173 Atl. 644, 95 A. L. R. 869), held that "the so-called 'presumption against suicide' is not a presumption but merely a permissible consideration of the non-probability of death by suicide." Elaborating on this ruling, the court stated that "as they deliberated on this case the jurors had the right to bear in mind the fact that to the average human being, life is more attractive than death. They were thus entitled to consider, on an even balance of the evidence as between accidental

death and suicide, the probabilities against suicide; but the court below erred in its interpretation and application of the so-called 'presumption against suicide.' The court [i. c. the court there under review] gave to the ordinary probability that a human being will not commit suicide the force of a fact in evidence shifting the burden of proof to the defendant." This was held to be error. According to Professor Thayer, after the presumption vanishes, "all is then turned into an ordinary question of evidence, and the two or three general facts presupposed in the rule of presumption take their place with the rest, and operate, with their own natural force, as a part of the total mass of probative matter. . . The main point to observe is that the rule of presumption has vanished." Thayer's Preliminary Treatise on the Law of Evidence, 346. Any statement in the Georgia decisions, if there be any, that the presumption against suicide obtains throughout the entire deliberations of the jury, to be counted as evidence even though there be conflicting inferences to be drawn from the evidence as to the cause of death, should be interpreted to mean that the fact that a person loves life better than death, the fact on which the presumption rests, and out of which it springs, may be considered by the jury in arriving at the truth of the issue presented. This is the proper interpretation to be placed on the ruling in *Mutual Life Ins. Co.* v. *Burson*, 50 *Ga. App.* 859 (3) (179 S. E. 390).

As stated in the beginning of this opinion, in a suit to recover a sum representing the additional amount payable under a life-insurance policy, where the death of the insured resulted from bodily injury "effected solely through external, violent, and accidental means," the burden of proof is on the plaintiff to establish by a preponderance of the evidence that the death of the insured resulted from bodily injury effected solely through external, violent, and accidental cause. *Mutual Life Ins. Co.* v. *Burson*, supra. Upon proof of a violent death, where the "evidence points equally or indifferently to accident or suicide as the cause" of death, and is therefore insufficient to authorize an inference that the death was due to suicide, the theory of accident rather than of suicide is to be adopted. Here, the presumption against suicide would avail the plaintiff, and the jury would be authorized to find that the death was due to accident rather than to suicide. It is therefore incumbent on the defendant, at this juncture, to produce evidence,

either circumstantial or direct, that will rebut the inference author-ized by the presumption against suicide that the death was due to accident, such as evidence that would authorize a jury to find that the death was due to suicide. When the defendant does this, the presumption against suicide vanishes and disappears. The de-fendant, at this point, when he introduces evidence in rebuttal which authorizes the jury to find that the death was due to suicide, car-ries the entire burden resting on him which is that of removing the presumption against suicide. There is no burden on the de-fendant to establish the *fact* of death by suicide. His burden is only to give the jury evidence from which they can infer that death was from suicide. The burden is not on him to establish the fact that the cause of death was suicide, except only in so far as it is necessary, in rebutting the inference or the presumption against suicide, to produce evidence which would authorize the jury to find that the death was due to suicide.

The presumption against suicide is a mere ephemeral thing, a phantom, something without substance, which immediately van-ishes and disappears upon the advent of any evidence sufficient to authorize a contrary inference. Evidence which would authorize an inference contrary to that authorized by the presumption, and which would therefore extinguish the presumption, must neces-sarily outweigh and preponderate over the presumption. The ex-pression contained in many decisions that, in a case where the pre-sumption against suicide prevails in favor of the plaintiff, the burden is on the defendant to show by a preponderance of the evi-dence that the death was due to suicide, properly construed, means no more than that the burden is on the defendant to over-come the presumption against suicide by producing evidence which would authorize a finding that the death was due to suicide. Such evidence must necessarily outweigh and preponderate over the presumption against suicide. In the case of *Mutual Life Ins. Co. v. Burson*, supra, and *Standard Accident Ins. Co. v. Kiker*, 45 *Ga. App.* 706 (4) (165 S. E. 850), it was not held that the burden is on the defendant to establish suicide by a preponderance of the evi-dence, but it was held only that the *presumption* against suicide must be overcome by evidence. Such evidence of course necessarily outweighs the presumption. Where the defendant has produced evidence in rebuttal of the presumption against suicide, and the

presumption against suicide has therefore vanished and disappeared, the issue as to the cause of death, whether from accident or suicide, will, after all the evidence is in, be determined on all the evidence adduced without any effect whatsoever being given to the presumption against suicide; but the jury may in their discretion, without proof, regard and give effect to the fact upon which the presumption against suicide rests, which is the well-known fact that a person prefers life to death.

After the presumption against suicide has been made to disappear on the production of evidence which would authorize the jury to find that the death was due to suicide, it does not follow that the burden of proof is on the defendant to prove the fact of suicide by a preponderance of the evidence. While there are expressions, which are obiter only, in a number of Georgia cases to the effect that in suits on life-insurance policies, the burden of proof is on the defendant to show by a preponderance of the evidence that the cause of the death was due to suicide, these expressions are in cases where the policies insure against death generally but provide for an exemption from liability where it is shown that the death was the result of suicide. In these cases the defense of suicide was an affirmative defense, predicated on the provision in the policy which excepted death by suicide from the operation of the policy. Such are the cases of *Gem City Life Ins. Co.* v. *Stripling,* supra, *New York Life Ins. Co.* v. *King,* supra, *Hodnett* v. *Aetna Life Ins. Co.,* 17 *Ga. App.* 538 (87 S. E. 813), and *Mutual Life Ins. Co.* v. *Durden,* 9 *Ga. App.* 797 (72 S. E. 295).

There is quite a distinctive difference between the liability of an insurance company under a life-insurance policy which insures against death generally but with an exception where the death is caused from suicide, and a policy which insures against death which occurs under certain definite restricted conditions, as where the death is caused from injury received from a *violent, external,* and *accidental* cause. While in a suit to recover under the first policy it might be that the burden of proof would rest on the defendant to establish by a preponderance of the evidence the fact that the cause of death was suicide, and therefore there was no liability under the policy, it does not follow that in a suit on the latter policy, to recover for a death which resulted only from a specially designated restricted cause, as a death from injuries resulting from a violent,

external, and accidental cause, which necessarily excludes death resulting from any other cause among which would be suicide, the burden of proof would be upon the defendant to establish, by a preponderance of the evidence, that the cause of death was suicide. In the latter case unquestionably, as is universally held, and which this court held in *Mutual Life Ins. Co.* v. *Burson,* supra, the burden of proof would be on the plaintiff to show by a preponderance of the evidence that the death was caused by an injury resulting from a *violent, external* and *accidental* cause. See in this connection Jefferson Standard Life Ins. Co. v. Clemmer, supra.

In a suit on a policy, which provides for indemnity where death results from bodily injury effected through external, violent, and accidental causes, where the plaintiff has produced enough evidence which, together with the so-called presumption against suicide, is sufficient to authorize, if not demand, the jury to find for the plaintiff upon the issue of accidental or suicidal death, it is then incumbent on the defendant to produce only evidence in rebuttal, or denial of, the presumption, such as evidence which would authorize the jury to find that the death was due to suicide and not to accident. The burden on the defendant is not the burden of proof to establish suicide by a preponderance of the evidence but is the burden only to go on with the evidence. In the parlance of checker players it is the defendant's move. The burden of proof still remains on the plaintiff to make out his case by a preponderance of the evidence, which includes the burden of showing accidental death by a preponderance of the evidence. This burden, notwithstanding the defendant has introduced such rebuttal evidence, remains on the plaintiff throughout the entire trial. See *Hawkins* v. *Davie,* 136 *Ga.* 550 (71 S. E. 873); *Strickland* v. *Davis,* 184 *Ga.* 76 (3) (190 S. E. 586); *Hyer* v. *Holmes & Co.,* 12 *Ga. App.* 837 (3, 4) (79 S. E. 58).

As persuasive authority, see the following cases: New York Life Ins. Co. *v.* Gamer, supra, Jefferson Standard &c. Co. *v.* Clemmer, supra, Fidelity & Casualty Co. *v.* Driver, 79 Fed. (2d) 713. In the Clemmer case, supra, it was held that "When unexplained death by violence is shown in an action on an insurance policy, the defendant who seeks to avoid liability on the ground of suicide has the burden of going forward with the evidence thereof, or the issue of suicide will go against him, but if he offers such evidence, the

burden of persuading the jury that death resulted from accident independent of suicide, and all other causes, remains with the plaintiff, if it rested upon him at the beginning, as in a suit upon an accident insurance policy." In Fidelity & Casualty Co. v. Driver, supra, decided by the United States Circuit Court of Appeals for the fifth circuit, in a case which arose in the district court of the United States for the middle district of Georgia, it was held that, "in action on accident policy containing provision excluding death by suicide, instruction that presumption of accidental death arose when proof was made of death by violent and external means and that the burden of proof was on insurer to show suicidal death held error." This was a suit to recover under a clause in an insurance policy for death caused from injuries sustained t rough accidental means. In the opinion written by Judge Sibley it is stated, with reference to the assignment of error on the charge of the court, as follows: "The serious error lies in putting the burden on the defendant to show that the death was not accidental, but suicidal, in a suit on an accident policy. The plaintiff under such a policy can recover only on proof of a death by accident as set forth in the policy. A contention by the insurer that it was suicide is not the assertion of an exception which he has the burden of pleading and proving, but is only another way of saying that the death was not accidental. In such an issue the so-called presumption against suicide is not a rigid presumption of law, but at most one of fact, the expression of a common observation and experience, so common that judges and jurors may utilize it in a trial without proof of it, that sane persons do not ordinarily take their own lives, but strive to the utmost to preserve them."

The burden of proof was on the plaintiff throughout the trial to show accidental death by a preponderance of the evidence. The burden of proof was not on the defendant to show by a preponderance of the evidence that the death was due to suicide. The court therefore erred in charging the jury as follows: "I charge you that the defendant in this case denies liability . . , where a death has been shown to your minds and satisfaction, and that it is by external, violent means—no one knows just how it happened —then the burden, the defendant contending that it is a case of suicide rather than homicide, would shift and rest upon the defendant to establish such contention or theory by a preponderance

of the evidence. The law imposes this burden upon the defendant because the presumption against suicide can only be overcome by evidence which excludes any theory of accidental death and by a preponderance of the testimony." The court repeatedly charged that this burden was on the defendant. As the evidence does not demand the verdict found for the plaintiff, this error in the charge requires the grant of a new trial.

■ The defendant insurance company, now the plaintiff in error, complains of the failure of the trial court to give in charge four separate and distinct requests to charge. Two of these requests,. those contained in the 9th and 10th grounds of the motion for new trial, were covered by the general charge in substantially the same language as that contained in the requests. It was not error to fail to give these requests in charge. The requests to charge contained in the 7th and 8th grounds of the motion for new trial, while perhaps they were not correct in the precise form in which they were framed, were generally to the effect that the burden of proof rested on the plaintiff to show that the death was due to accident rather than to suicide. In view of the ruling herein made that such burden of proof rested on the plaintiff, and the reversal of the judgment in this case is on the ground that the court erred in charging the jury that the burden of proof was on the defendant to establish by a preponderance of the evidence that the death of the insured was due to suicide, it is not necessary to pass on the assignment of error on the court's refusal to give in charge these requests. The matter will doubtless be taken care of on another trial.

■ The defendant offered in evidence a written extra-judicial statement, made by the sheriff of Wilcox County to the defendant, in which the sheriff narrated the result of his investigation of the death of the deceased, reciting the facts which he found concerning the death of the deceased, and his own conclusion therefrom that it did not appear to him that the deceased was murdered. The defendant also offered in evidence the testimony of members of the coroner's jury to the effect that the verdict of the coroner's jury, that the death of the deceased was at the hands of unknown parties, did not speak the true sentiments of the jurors, but that the jurors were of the opinion at the time of the rendition of the verdict that the cause of the death of the deceased was suicide, but that, out of

consideration for the feelings of the family of the deceased, the jury found the verdict which they did, and did not find that the cause of the death of the deceased was suicide. The defendant offered the foregoing testimony for the purpose, as it was claimed, to show that its failure to pay the indemnity called for by the policy was not in bad faith. The court rejected the testimony, and the defendant excepted in the motion for a new trial. Without passing on the question whether the testimony of the jurors could be admissible to impeach their verdict, it is sufficient to state that opinions of other persons as to the cause of the death, and extra-judicial statements as to the facts surrounding the death which were hearsay, were not admissible. They were not competent or relevant on the issue whether or not the cause of the death was accidental or suicidal. Not being competent and admissible for this purpose, they were not competent and admissible for the purpose of showing good faith on the part of the defendant insurance company in refusing to pay the claim.

"The good or bad faith of an insurance company in refusing to pay after demand is to be determined by the evidence adduced at the trial upon the merits of the controversy, and not by ex parte affidavits produced to the company as preliminary proof or for the company's information to induce voluntary payment." Held in *Travelers Ins. Co.* v. *Sheppard,* 85 *Ga.* 751 (4), 765 (12 S. E. 18). The court in the opinion in that case stated that, "in refusing payment after due demand according to the statute, the company would act at its peril, a peril neither increased nor diminished by the amount of information it might have or obtain, but only by the weakness or strength of its defence as manifested at the trial, any weakness in the plaintiff's case being, of course, counted as part of the strength of the defence. A defence going far enough to show reasonable and probable cause for making it, would vindicate the good faith of the company as effectually as would a complete defence to the action. On the other hand, any defence not manifesting such reasonable and probable cause, would expose the company to the imputation of bad faith and to the assessment of damages therefor under section 2850 of the Code. It would be a dangerous practice to let one party pelt the other with ex parte affidavits at will, and then bring these affidavits in at the trial to raise or support the charge of bad faith." Of course the same would apply

104

to such evidence offered by the defendant in support of its contention of good faith.

As a new trial is granted to the defendant, it is not necessary to pass on the exception in the motion for new trial to the court's refusal to charge a request to direct the jury to find against the plaintiff for damages and attorney's fees, or to pass on the exception to the judgment.

*Judgment reversed. Sutton and Felton, JJ., concur.*

FELTON, J., concurring specially. I concur in all that is said in the foregoing opinion. I am also of the opinion that a verdict for the plaintiff was not authorized by the evidence. The burden of proof was on the plaintiff. The uncontradicted facts presented two equally consistent, opposing theories, giving the plaintiff's evidence and contentions the most favorable interpretation possible (and even then it is extremely doubtful that they are as reasonable as the suicide theory). In such a situation the party having the burden of proof fails to sustain his position. The verdict in this case can not be sustained by unauthorized consideration of the fact that the deceased up to the time of his death had not attempted suicide, and generally loved life too well to take his own. The jury could not logically consider facts which apply to a normal man when the uncontradicted evidence shows that the deceased was not a normal man so far as his attitude toward taking his life was concerned. The jury was confined to the evidence in the case, which excluded the idea of the deceased's love of life as a normal man as determined by the evidence outside the circumstances attending his death.