27413, 27471.   NATIONAL LIFE & ACCIDENT INSURANCE COMPANY *v.* ROBERTS; and *vice versa.*

DECIDED JULY 8, 1939.

*Martin, Martin & Snow,* for plaintiff in error.
*McCullar & McCullar,* contra.

STEPHENS, P. J. Mrs. Roy Roberts sued National Life & Accident Insurance Company, alleging that she was the wife of John M. Rooks until he died on August 2, 1937, after which date she married again, and is now Mrs. Roy Roberts; that she and her deceased husband entered into a contract of insurance with the defendant on February 24, 1936, wherein the defendant agreed to pay to the plaintiff, the beneficiary, the sum of $500 in the event of the death of the insured John M. Rooks, for the stated premium of 42 cents weekly, which the deceased and the plaintiff kept paid up until the time of his death; that her husband had previously carried two policies of insurance with the defendant, and in taking out these policies the defendant gave the plaintiff's husband physical examinations and had actual knowledge of his physical condition; that the defendant's branch manager, who supervised the business of the defendant in this section, and other agents of the defendant, had known the insured for a long time and had actual knowledge of his physical condition, by examination, personal knowledge, and by appearance; that these agents came to their home, and both the plaintiff and her husband reminded them that the insured had served in the Canadian army, suffered from war wounds, and was drawing a pension from the Canadian government, and was physically disabled; that these agents informed her and her husband that this made no difference, that the company had previously insured her husband, and by examination had actual knowledge of his physical condition, and that they were willing to take the risk; that her husband then suggested that, in order to prevent a misunderstanding, the defendant should have one of its own physicians examine him again, whereupon the defendant's agents reminded him that this was their concern, that they had insured him before, and that it was not necessary to give him another physical examination; that her husband finally paid the premium demanded, and signed a blank application upon the representation that he need not bother to read it, no matter what the printed form or the insertions that they had made stated, that the company had actual knowledge of his physical condition and would grant insurance; that these agents took their money for almost two years, and the defendant sent agents to their home every month and sometimes several times to collect these premiums, and almost every time these agents saw and observed the physical condition of her

husband, and, "had they desired to contend that the company had been misled as to his physical condition, that they had many opportunities to make those contentions while her husband lived and while he could have obtained insurance elsewhere;" that the defendant acquiesced in her husband's condition, had actual knowledge of his condition, and accepted their money for several months upon the representation that, regardless of what the policy stated, in the event of death she would obtain the $500 shortly afterwards, and nothing could defeat her except the failure to pay premiums; that the defendant "accepted their money over this time under these representations, and are now estopped to deny them or to take advantage of any contrary provisions that may appear in that policy," that the defendant has been guilty of the utmost fraud and bad faith from the inception of its dealings with her, the defendant having no idea or intention of paying her any benefits, but simply fooled her and her husband out of their weekly premium payments. She prayed for judgment for $500 and interest, a penalty of 25 per cent. on account of the defendant's bad faith, and $250 attorney's fees on account of the defendant's fraudulent and stubbornly litigious attitude.

The defendant filed an answer in which, after admitting or denying various paragraphs of the petition, it was alleged that in the application for the policy the applicant stated that he was in good health and had never had any heart disease or tuberculosis, and the only ailment or injury which he had suffered was flu in 1932; that the defendant issued the policy on the basis of this application; that the defendant subsequently ascertained that the applicant was an ex-Canadian soldier, had been injured during the World War, and was drawing total and permanent disability from the Canadian government, and in the summer of 1933 he was suffering from tuberculosis for which he was subsequently confined in a Canadian hospital; that it has learned that before the date of the application the applicant was suffering from some chronic heart ailment, and that this physical condition of the applicant existed before the date of the application, and was directly responsible for his death; that "this defendant did not know of any of the facts set forth in the preceding paragraph until after the death of said applicant, and had no way of knowing, and this defendant charges that all of this information was in the full possession and knowledge, not only of

the applicant, but of the plaintiff in this case;" that in concealing his physical condition the applicant was guilty of fraud, and this conduct on his part relieves the defendant of any liability under the contract; that the applicant had paid $32.34 as premiums on said policy, and defendant herewith tenders this amount into court; that the defendant, as soon as it ascertained the fraud which had been practiced on it by the applicant and by this plaintiff, did then and there tender to the plaintiff at her home in Milledgeville, Georgia, the amount of said premiums, which tender was refused. Attached to the answer was a copy of the application for insurance, which contain the following questions and answers: "Are you in good health? A. Yes. Q. Who is your doctor? A. Dr. Woods, address Milledgeville, Georgia. Q. What illness, injury, or accident have you ever had? Give details. A. Flu, 1932, June, 3 weeks; recovery complete. Q. Have you ever had heart disease? tuberculosis, etc.? A. No." This application further states: "I hereby apply for insurance for the amount herein named, and declare that the answers to the above questions are complete and true and were written opposite the respective questions by me or strictly in accordance with my directions. I agree that said answers with this declaration shall form the basis of a contract of insurance between me and the National Life & Accident Insurance Company. . . I expressly waive, on behalf of myself and of any person who shall have or claim any interest in any policy issued hereunder, all provisions of law forbidding any physician or other person who has attended or examined me, or who may hereafter attend or examine me, from disclosing in the courts or otherwise any knowledge or information which he thereby acquired; and I hereby specifically authorize all such persons to freely communicate their knowledge to the company, if it requests them so to do." In the managers' inspection report attached to the application occur the following questions and answers. "Q. Are you satisfied from information and observation that the applicant is in sound health, and without any deformity, lameness, or physical defect? A. Yes. Q. Do you recommend that insurance applied for be granted? A. Yes. Remarks: Left side of face scalded with hot water during World War; left scar but recovered complete."

The plaintiff filed an amendment to her petition, alleging that the defendant, shortly before it issued the policy sued on, issued

another policy in the sum of $1000, and before issuing the policy, employed Dr. R. E. Evans, a reputable physician at Milledgeville, Georgia, who made a thorough examination of the insured and furnished a complete medical report to the defendant, based on the examination of Dr. Evans; that the defendant issued and delivered the policy to the insured; that the insured was in the same state of health, or a better state of health, at the time the policy sued on was issued than he was when the prior policy was issued; that certain agents of the defendant, including its district manager or superintendent at Macon, recommended to the home office of the defendant that the policy be issued, and the home office, having before it the medical certificate of Dr. Evans, issued the policy sued on, with full knowledge of the condition of the insured; that said agents collected and transmitted to the defendant company the premiums on said policy with the full report as to the physical condition of the insured; that the defendant, for a long number of months, accepted the premiums of the insured, and made no complaint of the same until after the date of the death of the insured; and therefore that the defendant is estopped from denying actual knowledge of the condition of the insured and the acceptance of the premiums made with the full knowledge of his condition over a long period of months. Attached to this amendment was a full copy of the policy sued on.

The jury found for the plaintiff $500, interest at 7 per cent., and $150 attorney's fees. The defendant moved for new trial on the general grounds and on three special grounds. The first of the special grounds alleged that the uncontradicted testimony demanded a verdict in favor of the defendant. The second alleged error in a ruling of the court on the burden of proof on the question of bad faith and attorney's fees. The defendant's counsel contended that the burden was on the plaintiff to show bad faith, and the court expressed the opinion that there would be a prima facie presumption of bad faith from the furnishing of proof of death and failure to make payment within sixty days. The third ground alleged that there was no evidence of bad faith to sustain the finding by the jury of $150 as attorney's fees. The motion for new trial was overruled, and the defendant excepted. The plaintiff filed a cross-bill of exceptions; also a motion to dismiss the writ of error on the main bill of exceptions.

■ The motion to dismiss is based on allegations that the supersedeas bond given by the plaintiff in error was signed by an attorney, and was not properly witnessed, executed, and delivered. It was not necessary to the validity of the bill of exceptions for the defendant, against whom judgment was rendered, to give a supersedeas bond. The contention that a proper bond was not given is not sustained, and the motion to dismiss is overruled. *Spooner* v. *Coachman*, 18 *Ga. App.* 705 (90 S. E. 373).

■ ■ The cross-bill of exceptions alleges that the court erred in overruling the demurrers to the answer of the defendant. The answer set up a valid defense on the ground of fraud, and did not show an estoppel of the defendant to plead it. The court did not err in overruling the demurrers. The cross-bill further alleges that the court erred in overruling the plaintiff's motion to exclude all testimony relating to the application for the policy; the motion being based on the ground that a copy of the application was not attached to the policy, and therefore was not a part of the contract. There was no error in overruling this motion, because the insurer was claiming that the policy was obtained by actual fraud. The cross-bill further alleges that the court erred in allowing counsel for the defendant to state in the hearing of the jury what he expected to prove by a witness whose testimony was objected to by the defendant. It appears that the court excluded the testimony, but did not charge the jury to disregard it. This was sufficient in the absence of any request to charge. By excluding the testimony itself, the court told the jury they could not consider it, and it does not appear that the incident complained of injured the plaintiff's cause in any way. The cross-bill further alleges that the court erred in admitting in evidence the depositions of Dr. Anglin, on the ground that proper legal notice had not been given and no proper court order had been taken, etc. These objections can not be determined by this court, because the record does not contain any statement as to what order or orders were passed by the court or what notice was given. In regard to the objection that the testimony of Dr. Anglin was obtained by fraud, there is no evidence to this effect. The record shows that the confidential nature of this information was waived by a clause in the application for the policy, and also by the beneficiary herself in her claimant's statement. Paragraph 3F of the cross-bill can not be considered, be-

cause it does not set out what objections were overruled by the court, nor do the same appear elsewhere in the record.

The cross-bill further alleges that the court erred in refusing, on motion, to rule out the entire testimony of Dr. Anglin, on the ground that he testified only from records, and not from his own knowledge. There was no error in so refusing as the brief of evidence shows that this description of the doctor's testimony is incorrect.

■ The evidence in this case demanded a finding that the policy was procured by wilful misrepresentation, especially as to the fact that the insured had been treated, before the application for insurance, for tuberculosis, and that for several years he had been drawing a pension from the Canadian government on account of this disability. Under the provisions of the policy this case falls within the line of decisions represented by *Metropolitan Life Ins. Co.* v. *Alexander,* 43 *Ga. App.* 385 (159 S. E. 124) ; *New York Life Ins. Co.* v. *Patten,* 151 *Ga.* 185 (106 S. E. 183) ; *Hutson* v. *Prudential Ins. Co.,* 122 *Ga.* 847 (50 S. E. 1000) ; *Puckett* v. *Mutual Life Ins. Co.,* 32 *Ga. App.* 263 (122 S. E. 791). It is true that the insurance company collected a number of premiums after knowledge had come to the general manager and supervisor of the territory around Macon that the insured was afflicted with tuberculosis and had been drawing a pension therefor. There are no exceptions in the record which require a ruling on the question of estoppel. The court did not charge anything about estoppel, although estoppel was sufficiently pleaded, and there is no exception in the cross-bill which alleges that the charge did not cover the issues in the case.

There was in evidence a previous policy dated July, 1933, at which time the insured was examined by Dr. Evans. This doctor reported to the company that all organs of respiration, lungs, pleura, larynx, etc., were free of evidence of disease either past or present, and that the applicant was a first-class risk. Dr. Wood testified that in the same month, July, 1933, he treated Rooks for a condition that he thought was influenza; that this illness continued for several weeks; that he diagnosed the case as tuberculosis, but never told Rooks positively that he had found he had tuberculosis; and Rooks went under the name of Ryan at that time. Dr. George Anglin testified for the defendant, that in November, 1934, John M. Rooks was in a hospital in Toronto, Canada, for

treatment; that Rooks told the witness that he was receiving a pension, having been discharged from the army with a diagnosis of tuberculosis; that he was granted a pension for that condition from the year 1933; that the witness examined Rooks on November 5, 1934, became convinced that Rooks had tuberculosis, and recommended his admission to the hospital, where he remained nine or ten days; that the witness made physical examinations, laboratory, and x-ray examinations, and Rooks was discharged from the hospital on November 19, 1934; that the witness's diagnosis was that Rooks was suffering from pulmonary tuberculosis, moderately advanced, and that it was in a stage of quiescence; that Rooks was not in good health, and had opportunity of maintaining and improving his health under suitable conditions, but would never be able to shake off the tuberculosis altogether; that within a period of a year and a half from the time Rooks was examined he might physically be feeling comparatively well, but certainly would still have tuberculosis; that the witness reported his diagnosis to Rooks, and discussed it quite frankly with him, specifically telling him that he had tuberculosis. This testimony as to the condition of the insured in November, 1934, was not contradicted, nor was the witness impeached in any manner.

■ The statement of the court that if the defendant had not made payment within sixty days after receiving proofs of death there would be a presumption that the defendant had acted in bad faith, and that the defendant had the right to show that it did not act in bad faith but was only taking sufficient time to examine the facts of the case, and that its failure to pay was because it was not legally liable, was not a ruling that the burden of proof was on the defendant to show that it did not act in bad faith. *Hawkins* v. *Davie,* 136 *Ga.* 550 (71 S. E. 873); *Hyer* v. *Holmes,* 12 *Ga. App.* 837 (3) (79 S. E. 58).

■ In view of the above rulings the third assignment of error, that the evidence was insufficient to show that the defendant had acted in bad faith, need not be considered. A verdict for the defendant was demanded, and the court erred in overruling the motion for new trial.

*Judgment reversed on the main bill of exceptions; affirmed on the cross-bill. Sutton and Felton, JJ., concur.*