35330. GULF LIFE INSURANCE COMPANY *v.* MOORE.

Decided October 1, 1954.

*Tindall & Tindall, Stonewall Dyer, J. D. Tindall, Frank Kemp,* for plaintiff in error.

*Lipford & Stripling,* contra.

Townsend, J. ■ Special ground 4 of the amended motion for new trial contends that the court erred in charging the jury as follows: "I charge you that where an applicant for insurance represents in good faith that she was in sound health, and on the strength of such representations, and upon the opinion of the agent, the insurance company issued its policy, and it was in good faith accepted by the applicant, the policy will not be avoided by reason of the fact that the applicant was then affected with an incipient and fatal malady which at the time had

not manifested itself, or in any way deranged, impaired, or affected the general soundness and healthfulness of the applicant." This charge is correct as a principle of law, and was apparently quoted from the headnote in *National Life &c. Ins. Co.* v. *Martin*, 35 *Ga. App.* 1 (132 S. E. 120). Counsel for the defendant argues, however, that it is error as constituting an expression of opinion on the part of the court as to what had been proved in the case, in violation of Code § 81-1104. This court has frequently recognized that the wording of a decision may, when given out of context in instructions to a jury, be misleading even though it represents a correct statement of the law; but after a consideration here of the charge as a whole, we do not believe the jury could have been misled into believing that the court was instructing them to find as a matter of fact that the plaintiff had proved these issues, but rather was instructing them to find that, where such facts were shown, they would not be sufficient to avoid the policy. The ground of the motion for new trial is without error.

■ Special ground 5, which complains of the charge as a whole, is without merit. *Pryor* v. *State*, 40 *Ga. App.* 225 (2) (149 S. E. 177).

■ In special ground 6 error is assigned on the following instruction: "Good health is a relative term and does not mean absolute freedom from physical infirmity, but only such a condition of body and mind that one may discharge the ordinary duties of life without serious strain upon the vital powers." In special ground 7 error is assigned on the following: "I further charge you in relation to good health, a recovery may be had notwithstanding that at the time the application for the policies of insurance were made, the insured was laboring under an infirmity of which she was ignorant and which did not interfere with the discharge of her ordinary duties of life." In special ground 8 error is assigned on the following: "Good health, illness and diseases must be considered in an application for insurance not in the light of scientific technical definition, but in the light of the insured's understanding in connection with which the terms are employed in the examination."

These excerpts from the charge all contain correct rules of law, applicable to the main issue in this case, which was whether

the insured was in sound health at the time the applications for the policies were made out, or whether she was not in sound health and made fraudulent misrepresentations for the purpose of obtaining the insurance. See, in this connection, *National Life &c. Ins. Co.* v. *Martin*, 35 *Ga. App.* 1 (2), supra; *Atlantic & Birmingham R. Co.* v. *Douglas*, 119 *Ga.* 658 (2) (46 S. E. 867); *National Life &c. Ins. Co. of Tenn.* v. *Camp*, 77 *Ga. App.* 667, 671 (49 S. E. 2d 670). It is contended, however, that good health such as would enable one to perform the ordinary duties of life is not synonymous with "sound health" as used in insurance law, and that the charges were therefore not adjusted to the case and were misleading to the jury. In Metropolitan Life Ins. Co. v. Chappell, 151 Tenn. 299 (269 S. W. 21), it was stated: "As used in life insurance policies, there is no material difference between 'sound health' and 'good health'." In Tool v. National Life &c. Ins. Co., 130 Kan. 117 (285 Pac. 580), the court suggested that, "in view of the company's method of writing insurance without medical examination of the applicant, on nonexpert observation of the applicant by the solicitor, and the applicant's statements, sound health in the policy should be regarded, for all purposes, the same as good health in the application." The words have frequently been used interchangeably in Georgia decisions. *Progressive Life Ins. Co.* v. *Gazaway*, 67 *Ga. App.* 339 (20 S. E. 2d 189); *Mutual Benefit Health &c. Assn.* v. *Bell*, 49 *Ga. App.* 640 (8) (176 S. E. 124); *Atlantic &c. R. Co.* v. *Douglas*, supra. These grounds are without merit.

■ The charge excepted to in special ground 9 is as follows: "To sustain a charge of fraud as to answers made in an application for insurance, the proof must be clear, cogent, convincing and certain." The charge as given was correct. (*National Life &c. Ins. Co.* v. *Falks*, 57 *Ga. App.* 384, 389, 195 S. E. 463), and was not subject to the criticism that it nullified the court's charge relating to the preponderance of evidence. This ground is without merit.

■ Special grounds 1, 2, and 3, contending that a verdict for the defendant was demanded, will be considered in relation with the general grounds. The evidence in this case shows substantially the following facts: T. B. Davis, an acquaintance of the plaintiff beneficiary and an insurance salesman for the defend-

ant, called his attention to the company's $500 life-insurance policy, and as a result both the plaintiff and Mrs. Moore took one out on an application made May 2, 1949. Mr. Davis later informed the parties that they could increase the amount, and Mrs. Moore made application for another $500 policy on October 3, 1949. Both policies were issued and the applications were not attached thereto. The plaintiff witnessed the first application and T. B. Davis the second. Both contained the following questions and answers: "19. Have you ever had any of the following diseases or impairments? (e) Of heart or blood vessels (as for example, high blood pressure, dropsy, angina, varicose veins, etc.) *No.* (j) Syphilis? *No.* 26. Are you now in good health and sound condition? *Yes.* 29. When were you last attended by a physician? *Tonsillectomy, 1947, duration 1 week. Complete recovery."* In lieu of question 29 which appeared on the October application, the May application contained the following: "Have you had a check-up or examination by a doctor and/or had any illness not already mentioned within the past two years? *No."*

The insured died on March 26, 1950. Dr. Kinnard testified that he first saw the insured on June 27, 1947, when she complained of constant headache, dizziness, and nausea; that he took a Kahn test with affirmative result, showing syphilis, and another was given her by the State; that he recommended a spinal tap, and she was hospitalized for ten days in June, 1947, while this was done. Intensive treatment by means of drugs was carried out and on June 1, 1948, tests showed marked improvement from treatment; that she suffered from cerebral syphilis with definite damage to the valves of the heart; that she took treatment between June, 1947, and April, 1948, once to twice a week, and after 1948 the witness saw her from one to two times a month until her death; that she was still under treatment at the time of her death and was seeing him at intervals of three or four weeks; that she made considerable improvement; that she was told she had a condition which required intensive treatment, a long period of observation, and they had hopes of her continuing a fairly good healthy life; that she was never told she could not make a complete recovery or that she had any condition which would cause sudden death or incapacitate her

activities, but was told she would require constant observation and intensive treatment; that she was given no discouraging information; that she was probably affected with this syphilitic condition before any symptoms developed for a period of twelve or fourteen years; that subsequently to her hospitalization in 1947 she could have been considered as an arrested case with the original damage done; that he never told her she had syphilis or told her about the heart or brain damage. Dr. Barnard P. Wolf testified that the insured was referred to him by Dr. Kinnard; that she came to him bearing an open letter which reported the results of his tests, and stated Dr. Kinnard told her she had a positive Wasserman, and she wanted to check up on her heart, but when questioned could not recall any acute syphilis; that he explained to her that she had a syphilitic heart and told her the diagnosis, in 1947, that she had a heart disease on the basis of syphilis; that he did not tell her it was so serious because at that time it was not; that he thought under treatment she should do pretty well; that this particular type of heart disease is almost in the realm of curable heart disease, not her particular one, but early syphilis is curable; that he told her with treatment it could be arrested; that she came back in December, 1947, greatly improved.

The insured died suddenly as the result of a heart attack. From early 1949 until her death she carried on her housework, worked in her husband's store, engaged in normal social activities, and appeared to be in good health.

The question of whether the evidence set out above was sufficient to authorize a verdict for the plaintiff, or whether it demanded a verdict for the insurance company, must be determined by the yardstick succinctly stated in *National Life &c. Ins. Co.* v. *Falks*, supra, as follows: "The application not having been attached to or made a part of the contract of insurance, the policy is not avoidable because of the falsity of representations made by the insured as to her state of health and whether or not she had had any previous illness, even though such statements are as to facts material to the risk, unless the act of the applicant for insurance was fraudulent." See also *Lee* v. *All States Life Ins. Co.*, 49 *Ga. App.* 718 (176 S. E. 811); *National Life & Accident Ins. Co.* v. *Atha*, 69 *Ga. App.* 825 (26 S. E. 2d

675) ; *National Life & Accident Ins. Co. v. Strother*, 53 *Ga. App.* 241 (2) (185 S. E. 373) ; *Hamby v. American Ins. Co.*, 73 *Ga. App.* 531 (37 S. E. 2d 217) ; all holding in substance that, where the evidence shows a misstatement wilfully made or a material fraudulent concealment in answers to questions made in an application for insurance not attached to the policy, a verdict in favor of the insurer will be demanded.

There is, however, a material conflict in the testimony on this point. Davis, the insurance agent, testified positively that on both occasions he read to Mrs. Moore the questions in the application for insurance and wrote down the answers as she gave them to him. He and the plaintiff both testified that the plaintiff was present on the first occasion, and on the second the plaintiff was in the store and Mrs. Moore was at the house, Davis going first to the store and then to the house. The plaintiff, however, testified that, on the first occasion when he was present, Davis merely asked himself and his wife whether she was apparently in good health and they both said that she was; that he did not ask them about hospitalization or anything like that, and that he did not hear Davis read out the questions relating to syphilis, heart trouble and so on; also, that, on the second occasion, Davis filled out the application in the store and then went to the house simply to procure his wife's signature. He also testified that he told Davis Dr. Kinnard was their family doctor.

There is no question that the statements in the application were false and that the insured, if she knew what they were, must have known they were false. There is no question but that they were material and changed the extent, nature, and character of the risk, and it must be conclusively presumed, if they were made falsely, that they were falsely made with intent to procure insurance, which would be a legal fraud. There is, however, a direct contradiction in the record as to whether or not they were made at all. The plaintiff was present on the first occasion and actually witnessed the application; according to his testimony Davis asked only whether or not the insured was in apparent good health, and then he proceeded to fill in the form. He did not read it to her before she signed, and there is no evidence that she read it or knew that these specific questions were in it when she signed, aside from the testimony of Davis that he read her

the questions and she answered them. If the jury believed the plaintiff on this point, which they must have done in order to return a verdict in his favor, then they necessarily disbelieved the agent. Code § 38-1802 provides: "A witness may be impeached by disproving the facts testified to by him." Code § 38-1806 provides in part: "When a witness shall be successfully contradicted as to a material matter, his credit as to other matters shall be for the jury." If the jury believed the plaintiff and disbelieved the defendant's witness as to what occurred in regard to signing the first application, then they were authorized, if they so desired, to disbelieve his further testimony as to what occurred on the second occasion. Whether or not the insured made the statements contained in her application, or whether they were provided for her by another, was necessarily material, for it is not the falsity, but the fraud, which vitiates a policy founded upon an application which is not a part of the insurance contract. Under the evidence in this case, it cannot be said as a matter of law that a verdict was demanded for the defendant on the issue of fraud. Accordingly, the general grounds of the motion for new trial and the related special grounds are without merit.

■ The charge of the court on Code § 56-706, relating to the liability of insurance companies for attorney's fees where the refusal to pay is in bad faith, was error, as contended in special ground 10. "Refusal of an insurance company 'in bad faith' to pay means in Georgia a frivolous and unfounded denial of liability. If there is any reasonable ground for contesting the claim, there is no bad faith." *Pearl Assurance Co. v. Nichols*, 73 *Ga. App.* 452, 455 (37 S. E. 2d 227). This being a closely contested case, in which it appeared that the defendant had reasonable ground for denying liability, the charge relative to attorney's fees was error.

*Judgment affirmed on condition that the plaintiff write off from the verdict the amount received as attorney's fees within ten days after receipt of the remittitur from this court by the trial court; otherwise reversed. Gardner, P. J., and Carlisle, J., concur.*

## On Motion to Tax Costs.

Subsequently to the judgment of the Court of Appeals in this

case, a motion was filed by the plaintiff in error that this court tax costs for bringing the case to this court upon the defendant in error. The general rule is that, where the result of the judgment rendered by the court of review effects a substantial modification in the judgment of the trial court, even where the judgment is one of affirmance upon condition, costs should be taxed against the defendant in error. *Anderson* v. *Beasley,* 169 *Ga.* 720 (151 S. E. 360); *Hardy* v. *Thomas,* 208 *Ga.* 752, 754 (9) (69 S. E. 2d 609). It has been held that a judgment of affirmance against an insurance company involving a contract of insurance, on condition that attorney's fees awarded under the "bad faith" clause be written off, is such a substantial modification of the judgment as to result in the taxing of costs against the defendant in error. *National-Ben Franklin Fire Ins. Co.* v. *Darby,* 48 *Ga. App.* 394 (172 S. E. 819); *Equitable Life Assurance Society* v. *Gillam,* 195 *Ga.* 797 (35 S. E. 2d 686, 147 A. L. R. 1008). Accordingly, it is ordered that the costs of bringing the proceedings to this court be taxed against the defendant in error.