38477. KENNESAW LIFE & ACCIDENT INSURANCE COMPANY v. TEMPLETON.

DECIDED NOVEMBER 30, 1960—REHEARING DENIED
DECEMBER 20, 1960.

874

*Smith, Field, Ringel, Martin & Carr, Sam F. Lowe, Jr.,* for plaintiff in error.

*Buchanan, Edenfield & Sizemore, Newell Edenfield, Wyatt & Morgan, Lewis R. Morgan,* contra.

BELL, Judge. ■ In this case the plaintiff asserts that the insured came to his death solely by external, violent, and accidental means, in that the double-barreled shotgun which he was in the process of cleaning was discharged by accident, causing his instant death. The defendant, on the other hand, contends that the insured met his death through intentional self-destruction by suicide, and thus the defendant is relieved from liability by reason of *Code* § 56-909, which provides, "Death by suicide, or by the hands of justice, either punitive or preventive, shall release the insurer from the obligation of his contract." From the cases which both parties have amassed in their briefs, coupled with the additional cases the court has examined, it appears that

the area of this particular conflict is one of the most fought-over battlegrounds of the law. According to the great weight of authority, in determining whether or not the insurer is liable under these circumstances, where the policy provides for benefits in case of death by external, violent, and accidental means, where the means producing death were external and violent, there is a presumption, in the absence of evidence to the contrary, that the means were also accidental. 12 A. L. R. 2d 1250, 1276. This presumption has been applied in a variety of situations, including death by asphyxiation, by automobile accident, by drowning, by explosion, by falling, by gunshot wound, and in many other circumstances. Thus, "Cases of this sort have always been and will always be difficult. A human being is found dead; it is apparent that death was caused from a gunshot wound from a weapon found nearby, and that this gun was fired through some act of the deceased. But the question at once arises as to whether the wound was voluntarily inflicted with the intention of self-destruction or was the result of some unfortunate and involuntary mischance in the handling of the weapon. No other person has witnessed the event; there is no direct evidence to tell us what really happened. We can seek the answer only through the evidence of all the surrounding circumstances from which inferences may properly be drawn. And from these it is rare that conclusive or entirely convincing results are obtained." Clemmer v. Jefferson Standard Life Ins. Co., 9 F. Supp. 115, 121 (reversed in 79 F. 2d 724; 103 A. L. R. 171). A study of many cases considering this problem indicates that the mental, moral, and emotional state of the deceased is an important factor in determining whether or not the jury could have concluded that the death was by suicide rather than by accident or vice versa. Thus, where the evidence indicated that the insured was happily married, devoted to his wife and child, a man of good character, prosperous in business, and there was no indication of intent to commit suicide, and where the firearm went off while he was sitting at his desk looking at some papers, it was held that the proof of death from the injuries received raised a presumption of death by accidental means. Metropolitan Life Ins. Co. v. Graves, 201 Ark. 189 (143

S. W. 2d 1102). To the same effect, where the body was found with two pistols, see Aetna Life Ins. Co. v. Milward, 118 Ky. 716 (82 S. W. 364, 68 L. R. A. 285, 4 Ann. Cas. 1092).

In a case before this court where the evidence showed the insured died as a result of a gunshot wound but without further explanation as to the cause of death, it was held that the plaintiff is aided in carrying the burden by the presumption or inference that the death was by accident rather than by suicide. *Schneider v. Metropolitan Life Ins. Co.*, 62 Ga. App. 148 (7 S. E. 2d 772). In the *Schneider* case the evidence showed that the deceased was aiding a neighbor in catching a hog at the barn. Shortly thereafter a noise was heard, and the insured was found lying in the doorway of the barn. The evidence further revealed that there was a "kindly" blue spot on the forehead of the insured; that he never regained consciousness; that an automatic pistol was found a foot or two from where he was lying; that there were no powder burns on his flesh, but one witness was under the impression that he saw some powder burns on the hat of the deceased; that the doctor who examined the deceased testified that the range of the bullet was downward and that the pistol would have had to be a little more than horizontal with the handle to make that wound, and in his opinion the pistol was fired at close range; that the pistol had been sold to the insured about six months before his death; and that when the pistol was found near the body of the deceased the magazine had been taken out and was found on his person. There was found in the record evidence that the insured had always been a man of jovial and kindly disposition; he had a wife and two children; there was no marital or family trouble to worry him, and on the day of his death and shortly before, he appeared to be in the same unworried, jovial, and contented mood, and that there was nothing about his actions to indicate anything unusual or that he would take his own life. On the other hand, there was evidence that he had frequent attacks of kidney colic, which lasted some minutes during which he would have fits and suffer excruciating and intense pain and agony. There was also evidence that, until the day before his death, he had operated a store for another person on a fifty-

fifty basis, and evidence indicating that he claimed that some time previously he had been robbed at the store and tied up, that these persons he accused were not convicted of robbery, and evidence that two or three days before his death he had a promise of two jobs and was going to take one of them but he didn't know which one. There was further evidence from which the jury might find that the deceased was $150 short in the settlement of his division of the profits in the store business. In the proof of death submitted to the insurer, the cause of death as signed by the plaintiff was stated to have been "gunshot wound self-inflicted." In that case the defendant contended that the evidence showed the insured had cause for committing suicide, and the fact that the deceased would have had to grip the pistol and squeeze it in order to pull the trigger shows that the same was not an accidental discharge of the pistol and, therefore, could not be an accidental death, and that the burden of the proof in the death of the deceased was not carried by the plaintiff to such an extent as to "show accidental death." The trial judge, on motion, granted a nonsuit, and the plaintiff excepted. This court there held that the petition as amended set out a cause of action and was not subject to any of the grounds of demurrer. In reaching this conclusion, it was pointed out that death might be the result of a gunshot wound self-inflicted and not be suicide, citing *Mutual Life Ins. Co. v. Durden,* 9 Ga. App. 797 (72 S. E. 295); *Freeman v. Metropolitan Life Ins. Co.,* 35 Ga. App. 770 (134 S. E. 639). It was further held in the *Schneider* case that on proof of a violent death such as death from a gunshot wound, where there is no evidence from which it can be inferred whether the death was accidental or suicidal and, therefore, the evidence points equally either way, the presumption against death by suicide obtains and comes to the aid of the plaintiff, and the jury is authorized to find that the death is due to accident, but in a case where there is conflicting evidence as to whether the cause of death was accidental or suicidal and the jury would be authorized to infer from the evidence either way, this presumption disappears, although the fact upon which the presumption rests, which is a person's love of life rather than death, may be considered by the jury in arriving at

a conclusion. After analyzing the evidence in the case, particularly the happy and jovial nature of the insured, his happy domestic status, and, on the other hand, his ill health, his overdrawing of the profits from the store, Presiding Judge Stephens, speaking for the court, stated, "It therefore follows, that, regardless of the presumption against suicide, and conceding that the evidence would have authorized an inference that the death of the insured was the result of suicide, the evidence was sufficient, considering the natural instinct of a man to love life, to authorize the inference that the death was not the result of intentional self-destruction; and the question whether the death of the insured was effected solely through external, violent, and accidental causes, or was the result of suicide, was properly one of fact for the jury, and not a question for the court." There it was held that the evidence was sufficient for the jury to find for the plaintiff, and that the trial court erred in awarding a nonsuit. In addition to the *Schneider* case, see also *Peppers v. Sovereign Camp W. O. W.*, 53 Ga. App. 851, 854 (187 S. E. 215) ; *Jefferson Standard Life Ins. Co. v. Bentley*, 55 Ga. App. 272 (3), 279 (190 S. E. 50) ; *Metropolitan Life Ins. Co. v. Kennedy*, 55 Ga. App. 554 (12), 560 (190 S. E. 873).

On the recited facts in the *Schneider* case, the evidence which pointed to suicide is in all respects somewhat stronger than the evidence which points to suicide in the present case. We have reviewed the evidence on both sides minutely, and are constrained to the belief that the evidence here, while it might have authorized an inference that the death of the insured was a result of suicide, is also sufficient to authorize the inference that the death was not the result of intentional self-destruction. By way of succinct comparison, in this case there are present no motives whatever for suicide, while in the *Schneider* case there were some.

In *Cox v. Independent Life &c. Ins. Co.*, 101 Ga. App. 211 (113 S. E. 2d 228), the insured was found dead almost in the middle of an unpaved roadway near his mother's house, with a bullet wound from his 22-caliber pistol entering about an inch over the right ear and exiting a little in back of the left ear. The pistol was in his hand and, according to the positive testi-

mony of one witness, his thumb was on the trigger; there were powder burns on the right temple; the insured was married and living with his wife; he had no quarrels or domestic difficulties; he had entered into partnership in a new business within the past two weeks; he was very light-hearted and jovial; he always carried a pistol with him; he liked to drink, had begun drinking on Sunday night and on Monday was drunk. On Monday he was seen lying on the ground under a tree by a witness, and he offered the witness a drink. He was also drunk Monday afternoon; Tuesday morning he got up and drank some coffee about 6:30 in the morning; he had no breakfast, asked for his pistol, left the house at 8:30, and was found lying in the road later that morning with an empty whisky bottle near him. This court held that the facts of that case did not, especially in the absence of any reasonable motive for self-destruction, preclude as a matter of law the theory of accident, and it was, therefore, error for the court to grant a judgment for the defendant notwithstanding the verdict.

The evidence here sufficiently supports the jury verdict which found that the insured met his death by accidental means, and the motion for a new trial on the general grounds was without merit. The jury formulated its conclusions from the evidence, and we cannot say that they were wrong.

■ The essence of the objections to the charge of the trial court as raised by special grounds 5 through 10 of the amended motion for new trial is that under Georgia law there is no presumption of accidental death or against suicide, or that if there is one, it disappears when evidence is introduced by the defendant which would authorize the inference that the death of the insured was due to suicide and that here the defendant had introduced evidence from which the jury would be authorized to infer that the death was due to suicide and that the court erred in instructing the jury that the plaintiff is aided by the presumption that the death of the insured was not due to suicide. The trial court's instruction to the jury on this aspect of the case, which embraces completely all of the charge objected to by special grounds 5 to 10 inclusive, is, in sequence, as follows:  [*Note: Although we quote this portion of the trial*

*court's charge in full and in sequence, by interspersed brackets
we shall identify the portions objected to by the various special
grounds of the amended motion.]* ". . . The burden which
rests on the plaintiff to prove her case by a preponderance of
the evidence, which includes the burden to prove that the
death resulted from an accidental cause, remains on the plaintiff
after the defendant has introduced evidence which would au-
thorize the inference that the cause of death was suicide and
this burden remains on the plaintiff throughout the trial. There
is no burden on the defendant to prove by a preponderance of
the evidence that the cause of death was suicide.

"In this same connection, I charge you, gentlemen, that in a
suit to recover upon a policy of life insurance where the in-
surance company defends upon the ground that the insured's
death was caused by suicide, the burden of proof is upon the
plaintiff to show by a preponderance of the evidence that the
death of the insured was caused by external, violent or acci-
dental means within the terms and provisions of the policy.
*[Begin ground 5]* The burden of proof which rests upon the
plaintiff to show that the death of the insured was caused by the
external, violent and accidental means and that the defendant
is liable under the terms of the policy is aided by the presump-
tion that the death of the insured was not due to suicide. *[End
Ground 5, begin Ground 6]* Where there is evidence that the
cause of death was from external, violent or accidental means
and the evidence is conflicting as to whether death was due to
accident or to suicide and the evidence is consistent with the
reasonable hypothesis that the death was due to accident rather
than suicide, there is a presumption that the cause of death was
accidental and was not caused by suicide. Whether the death
of the insured in this case, Lawrence H. Templeton, was due to
accidental means or was due to suicide is a question of fact for
you gentlemen of the jury to decide.

*[Begin Ground 7]* "I charge you that if the evidence adduced
before you on the trial of this case points equally and indif-
ferently to the theory of death by accident or death by a wound
intentionally self-inflicted, or suicide, the theory of death by
accident is to be adopted by you rather than the theory of sui-
cide.

"I charge you further that where the physical facts, the surrounding circumstances and the consideration of all the evidence in this case leaves the question of suicide in doubt in your mind, the plaintiff would be entitled to recover on the presumtion of accidental death. [*End Ground* 7]

[*Begin Ground* 8] "I charge you further that the amount of evidence sufficient to overcome the presumption that death was from natural causes or accident rather than suicide is purely a question for you gentlemen of the jury to determine. [*End Ground* 8, *begin Ground* 9] And in this connection, I charge you further that a conflict in the evidence would not destroy the presumption against suicide, but that presumption remains throughout the case and is overcome only by evidence which excludes with reasonable certainty any hypothesis or theory of death by accident. [*End Ground* 9]

[*Begin Ground* 10] "In a suit on a policy which provides for indemnity where death results from bodily injury effected through external, violent and accidental causes, where the plaintiff has produced enough evidence which, together with the so-called presumption against suicide, is sufficient to authorize the jury to find for the plaintiff upon the issue of accidental or suicidal death, it is then incumbent upon the defendant to produce only evidence in rebuttal, or denial, of the presumption such as evidence which would authorize the jury to find that death was due to suicide and not to accident. The burden on the defendant is not the burden of proof to establish suicide by a preponderance of the evidence but is the burden only to go on with the evidence. In the parlance of checker players, it is the defendant's move. The burden still remains on the plaintiff to make out her case by a preponderance of the evidence, which includes the burden of showing accidental death by a preponderance of the evidence. This burden, notwithstanding the defendant has introduced such rebuttal evidence, remains on the plaintiff throughout the entire trial." [*End Ground* 10]

The defendant especially attacks that portion of the charge which says there is a presumption that the cause of death was accidental, contending that as a matter of law there does not exist in this State any presumption that the cause of death in

any case was accidental. With this contention we do not agree, for in a case such as this where death occurred externally and violently from the discharge of a double-barreled shotgun and where suicide is the defense, the language in the charge which says there is a presumption that the cause of death was accidental merely states in reverse and is synonymous with the relevant presumption against suicide. See *New York Life Ins. Co. v. Jennings*, 61 Ga. App. 557 (3) (6 S. E. 2d 431), where the issue of suicide was not involved.

An examination of the case of *Mutual Life Ins. Co. v. Burson*, 50 Ga. App. 859 (179 S. E. 390) reveals that all but the last paragraph of the trial judge's quoted charge was taken in substantially identical language from that case, while the last paragraph is lifted almost verbatim from the opinion in the case of *New York Life Ins. Co. v. Ittner*, 59 Ga. App. 89, at p. 100 (200 S. E. 522). Thus, the entire charge of the trial judge on this aspect of the case was in language which previously has been approved by this court upon factual situations substantially similar to those in the present case. Ordinarily it would seem that this combination of circumstances would require approval of the charge here, and certainly this would be the case were we not constrained to the conclusion that these two cases are in conflict.

Indeed, after reviewing the cases dealing with the question of the presmption against suicide, it is manifest that presently the Georgia law on the point is nothing less than a welter of confusion and contradiction. This is an untenable situation which is unfair to the trial courts, lawyers, and the litigants alike, all of whom have the right to be able to determine from the statutes and the decisions of the courts precisely what the law is.

Four of the leading decisions on this subject are *Mutual Life Ins. Co. v. Burson*, 50 Ga. App. 859 (179 S. E. 390); *Metropolitan Life Ins. Co. v. Kennedy*, 55 Ga. App. 554 (190 S. E. 873); *New York Life Ins. Co. v. Ittner*, 59 Ga. App. 89 (200 S. E. 522); and *Schneider v. Metropolitan Life Ins. Co.*, 62 Ga. App. 148 (7 S. E. 2d 772). In each of these cases the opinion was delivered for the court by Judge Stephens, who, it cannot be gainsaid, was certainly one of the most able and respected

judges ever to grace the Georgia bench. And yet, these four cases, seemingly as a tribute to human frailty, collectively add to the presently confused and contradictory status of the Georgia law as to the scope and limitations of the presumption against suicide. Yet, these four cases are so exhaustive in content that they furnish a sufficiency of reasoning and principle from which a correct collation of the Georgia law on the point may be formulated.

The first of these cases, the *Burson* case, we think has contributed mostly to the confusion in our law, in that it endorsed a charge given by the trial court which approved consideration of the presumption against suicide in a case where the evidence was conflicting and where a finding by the jury of either accidental death or of suicide was authorized by the evidence. In a situation such as this, the presumption having disappeared, it is erroneous to charge at all with respect to the presumption against suicide. Furthermore, the *Burson* case expressly approved the principle that a conflict in the evidence would not destroy the presumption against suicide, but held that the presumption remains throughout the case and is overcome only by evidence which excludes with reasonable certainty any hypothesis or theory of death by accident. In these respects, the *Burson* case is in direct conflict with the *Schneider* case, which expressly holds that the presumption cannot continue in the presence of conflicting evidence, for the presumption disappears. Although Judge Stephens, in the *Ittner* case, attempts to reconcile the *Burson* case by expressly citing the *Burson* case and saying that any statement in the Georgia decisions that the presumption against suicide obtains throughout the entire deliberations of the jury, to be counted as evidence even though there be conflicting inferences to be drawn from the evidence as to the cause of death, should be interpreted to mean that the fact that a person loves life better than death, the fact on which the presumption rests and out of which it springs, may be considered by the jury in arriving at the truth of the issue presented. But this is not a suitable explanation, and is not persuasive, and is itself conflicting and confusing since obviously the presumption cannot continue in the presence of conflicting evidence

under the authority of the *Burson* case and disappear and vanish in the face of such evidence as in the *Schneider* and *Ittner* cases.

We think that the *Ittner* case more nearly states the law as it exists, and it appears to be sufficiently exhaustive in its reasoning and in its statements on principles. We specifically disapprove and overrule those portions of it (1) which attempt to explain and correlate the misstatements and incorrect enunciations in the *Burson* case, and (2) which state that, in every case, "—the jury may in their discretion, without proof, regard and give effect to the fact upon which the presumption against suicide rests, which is the well-known fact that a person prefers life to death." We hold the correct rule to be that where the presumption has vanished, the fact upon which the presumption rests, that a person prefers life to death, must itself be proved in each case as pertaining to the individual whose demise is in question before the jury may be authorized to consider it. The fact upon which the presumption rests having been proved as a fact standing alone without reference to the presumption, it is proper for the jury to consider it; in absence of such proof, it is not. But even where the basis is separately proved, it is erroneous to permit the jury to consider it in its relation to the presumption where the presumption has disappeared. It is judiciously capricious and erratic to merely close the front door to a vanished presumption and to approve it and welcome it through the back door. Since we feel that the *Burson* case incorrectly states the law, we also specifically overrule it insofar as it may conflict with the views expressed here.

Likewise, the case of *Metropolitan Life Ins. Co. v. Kennedy*, 55 Ga. App. 554, 557 (4) (190 S. E. 873) seems to erroneously follow in part the *Burson* case, and to the extent that it does so, it is specifically overruled. We think the correct rules to be gathered from the Georgia cases would authorize the trial judge to charge upon the presumption against suicide and in favor of accident only in those cases involving a defense of suicide (a) where no evidence other than that death occurred by violent and external means is introduced as to the cause of death, in which event the presumption will carry the plaintiff's prima facie case, or (b) where evidence is introduced which "points indifferently"

to either result, which basically means no more than no evidence at all, in which event the presumption will again apply and would make out a prima facie case for the plaintiff, or (c) where the plaintiff relies solely upon the presumption against suicide and has not abandoned it by introducing evidence tending to show affirmatively that the decedent did not die by self-destruction, so that the evidence which the plaintiff has introduced shows only that the decedent died as a result of violent and external means, and the defendant introduces evidence tending to show that death occurred by suicide, if the plaintiff offers further evidence which, if believed by the jury, would impeach the witness offering the testimony of the defendant tending to show suicide, the trial judge, after charging the jury properly upon impeachment, would be authorized to instruct the jury that if they found the defendant's witness offering the testimony tending to show suicide to have been impeached, the verdict should be awarded to the plaintiff, or (d) where the plaintiff relies solely upon the presumption against suicide and has not abandoned it by introducing evidence tending to show affirmatively that the decedent did not die by self-destruction so that the evidence which the plaintiff has introduced shows only that the decedent died as a result of violent and external means, and the defendant introduces evidence tending to show that death occurred by suicide, the trial judge would be authorized to instruct the jury that if they disbelieved the defendant's evidence tending to show suicide, or if the jury found that the defendant's evidence did not support the theory of suicide, the verdict should be awarded to the plaintiff.

With respect to (c) and (d) above, in instructing the jury under either of them, the trial judge should not use the phrase, "presumption against suicide." This permits the full application of the presumption and eliminates the confusion and possible prejudice which might be occasioned by using the word in this type of case.

In the vast majority of cases, including the one here, where each of the parties has introduced evidence as to the *cause* of death which will support inferences in favor of accident on the one side or suicide on the other, it would be error for the trial

court to charge on the presumption, since the presumption disappears wholly and completely under these circumstances.

Notwithstanding the disappearance of the presumption, we consider it to be proper for a trial judge to instruct the jury, where there are sufficient facts upon which to base the charge, that the ultimate fact to be determined by them is whether the deceased possessed the innate characteristics attributable to the mass of humanity of loving life and having the preference of life rather than death. The jury then could consider these elements in reaching their verdict.

It is erroneous to allow a presumption of law to remain in a case arbitrarily and unreasonably where it has disappeared in the face of rebuttal testimony. This is true for one sound reason, among others, that this would possibly amount to a denial of the due process clause of the Fourteenth Amendment to the Constitution. See Western & Atlantic R. v. Henderson, 279 U. S. 639 (49 S. Ct. 445, 73 L. Ed. 884). Indeed, it is erroneous for the judge to mention to the jury the existence of a presumption where it is not *existing*, but has vanished in the face of rebutting evidence. See *Seaboard Air-Line Ry. Co. v. Fountain*, 173 Ga. 593 (160 S. E. 789); *Macon Dublin & Savannah R. Co. v. Stephens*, 66 Ga. App. 636 (19 S. E. 2d 32). Furthermore, to allow a presumption to remain in a case such as this would very likely mislead the jury into believing that they are authorized to disregard the evidence or to add the presumption to the evidence and to return its verdict based in whole or in part on the presumption. While the weighing and sifting of the evidence, and the drawing of inferences and conclusions in the process, are among the prerogatives of the jury, an instruction of law which sanctions a complete ignoring of the evidence by the jury, or sanctions an unlawful addition to the evidence at the whim of the jury, transcends the proper functioning of the jury and constitutes reversible error.

Since the case before us contains a charge on the presumption against suicide after evidence appeared in the case from which an inference of suicide could be drawn and thus authorized the jury to disregard the evidence, and since this charge was based largely on those portions of the case of *Mutual Life Ins.*

*Co. v. Burson,* which we have specifically overruled, it follows that the trial court erred in charging on the presumption of law against suicide, and the judgment overruling the motion for a new trial must be reversed.

It is to be clearly understood that the holdings in this case with respect to the presumption against suicide and in favor of accident are restricted specifically to this particular presumption. No ruling is made or intended one way or another as to any other presumption not involved in this case.

■ The cases of *Mutual Life Ins. Co. v. Burson,* 50 Ga. App. 859 (179 S. E. 390); *Metropolitan Life Ins. Co. v. Kennedy,* 55 Ga. App. 554 (190 S. E. 873); *New York Life Ins. Co. v. Ittner,* 59 Ga. App. 89 (200 S. E. 522), and all other cases of this court insofar as they may conflict with the views expressed here are specifically overruled.

■ The fourth ground of the amended motion for new trial complained of the court's instructing the jury regarding the possibility of returning a verdict for penalties and attorney's fees, contending that the evidence, oral and documentary taken together, reveals that the defendant had a proper and legitimate defense. The attorney's fees and penalties arise by virtue of *Code* § 56-706, which provides, in substance, that when an insurer shall refuse, in bad faith, to pay within 60 days after demand has been made by the holder of the policy on which a loss has occurred, the insurer shall be liable in addition to the loss, to pay not more than 25% of the liability plus reasonable attorney's fees. The interpretation applied to this statute in numerous cases is that refusal to pay in bad faith means a frivolous and unfounded denial of liability. If there is any reasonable ground for the insurer to contest the claim, there is no bad faith. *Pearl Assurance Co. v. Nichols,* 73 Ga. App. 452 (37 S. E. 2d 227). Where the insurer has reasonable grounds for contesting the liability, there is no refusal to pay in bad faith within the meaning of this statute, and it is error for the trial court to charge the jury under this Code section that they may return a verdict for penalties and attorney's fees. *Gulf Life Ins. Co. v. Moore,* 90 Ga. App. 791, 792 (6) (84 S. E. 2d 696). The case of *Liner v. Travelers Ins. Co.,* 50 Ga. App. 643,

645 (5) (180 S. E. 383), seems to imply that where the insurer waits six months after proof of loss and then refuses payment, a jury question arises as to whether the refusal to pay was in bad faith or not. In the present case there was a similar delay, but we feel the present case is distinguishable from the *Liner* case because there it does not appear that the insurer had any reasonable grounds for defending the insured's demands, while here there was evidence introduced from which the jury, if it had been so inclined, could have returned a verdict of suicide, which would have been a defense to the insurer under the Georgia law. The trial court having erred in its charge relating to penalties and attorney's fees, this ground of the amended motion for new trial is meritorious.

■ There having been evidence to support the verdict as discussed and determined in division 1 of this opinion, the trial court did not err in overruling the motion for a judgment notwithstanding the verdict.

The judgment of the trial court overruling the amended motion for a new trial is

*Reversed. Felton, C. J., Townsend, P. J., Carlisle and Jordan, JJ., concur. Nichols and Frankum, JJ., dissent.*

NICHOLS, Judge, dissenting. When, in the trial of a lawsuit, a rebuttable presumption becomes applicable to the contentions of one of the parties (in the instant case the rebuttable presumption against suicide), it is a question for the jury, under proper instructions by the trial court with reference to such presumption, to determine whether the presumption has been successfully rebutted, unless the evidence in the case is such as to demand a finding that the deceased committed suicide, in which event a verdict so holding would be the only one authorized. "It is not error in the court, after having charged the jury as to a presumption arising under a given state of facts, not amounting to positive proof of the thing presumed, to add 'but this presumption is not conclusive. It may be rebutted by evidence, and it is for you to determine, whether or not it has been rebutted.'" *Black v. Thornton,* 31 Ga. 641 (2).

In a case like the one sub judice where death by external, violent and accidental means has been established, a presumption against suicide arises, and such presumption is not rebutted, as a matter of law, merely by the introduction of *any* evidence that would tend to show suicide. To the contrary such presumption remains in the case until the close of all the evidence and (1) a finding of suicide is demanded, or (2) the trior of facts, a jury in the case before us here, determines, under proper instructions from the trial court, that the presumption has been successfully rebutted by a preponderance of the evidence as to such question. In other words the mere introduction of testimony tending to show suicide, which testimony the trior of facts determines to be successfully impeached, does not remove the presumption against suicide from the case, and, under such circumstances, where a jury is the trior of facts, the trial court is required to instruct the jury as to the rule of law regarding such presumption.

I am authorized to say that Judge Frankum joins with me in this dissent.

### On Motion for Rehearing.

Bell, Judge. ■ In her motion for rehearing the defendant in error vigorously protests that this court has patently confused evidence pointing "indifferently" to either accident or suicide with "no evidence" in stating in division 2 of the opinion that the correct rules ". . . to be gathered from the Georgia cases would authorize the trial judge to charge upon the presumption against suicide and in favor of accident only in the cases involving a defense of suicide . . . (b) where evidence is introduced which 'points indifferently' to either result which basically means no more than no evidence at all, in which event the presumption will again apply and would make out a prima facie case for the plaintiff." This confusion, it is urged, is made obvious by the decision of the Supreme Court in *Travelers Ins. Co. v. Sheppard*, 85 Ga. 751, 802 (12 S. E. 18).

Mr. Justice Bleckley, in delivering the opinion for the Supreme Court in the *Sheppard* case, at p. 802 (29), stated: "Where the fact of death is established, and the evidence points equally or indifferently to accident or suicide as the cause of it, the

theory of accident rather than of suicide is to be adopted." In *New York Life Ins. Co. v. Ittner*, 59 Ga. App. 89 (200 S. E. 522), beginning on page 93, this court considered the quoted statement from the *Sheppard* case exhaustively. Without repeating what was said in the *Ittner* case, we adopt it subject only to the exceptions noted in the main opinion here. Accordingly, we reassert that where there is evidence authorizing a finding that a particular person took his own life, a jury is not authorized to disregard this testimony by the carte blanche process of adding to whatever evidence there is that the person did not commit self-destruction the ex parte fact that people generally prefer to live rather than to die. But we do say that a jury, in connection with other facts tending to show that the person did not take his own life, may consider proved facts which show that the particular person involved had no apparent reason for taking his life and that he loved life and preferred to live rather than to die.

One other thing might be said with reference to the statement in the *Sheppard* case as applied to the contention of the defendant in error in her motion for a rehearing, and that is that if we were to construe the language to mean that the evidence points with equal consistency to two opposing conclusions, we would then run head-on into the rule of law that where such a situation exists the party having the burden of proof cannot prevail. We do not go this far. See *Taylor v. State*, 44 Ga. App. 387, 417 (161 S. E. 793) and the many subsequent civil cases following the principle.

Furthermore, in the *Sheppard* case the court was discussing the propriety of the denial of a nonsuit, and we are convinced that this court in the *Ittner* case correctly construed the statement in the *Sheppard* case, and there correctly stated the law with the exceptions which we have noted in this opinion.

■ The crux of the decision in this case is that upon the submission of evidence by the defendant which would authorize a finding of suicide, the presumption vanishes as a substantial matter which the jury may take into consideration or use as an aid in evaluating either the evidence of the defendant seeking to establish suicide or that of the plaintiff seeking to establish

accident. It is in this sense only that the words, "vanishes" or "disappears," are used throughout this opinion with relation to the presumption—with only one exception. This one exception is that the presumption is totally obliterated and vanishes completely where a plaintiff abandons the presumption by introducing additional evidence as to the cause of death other than the mere fact of death by violent and external means.

The respective motions for rehearing filed by the parties are denied.