## 42668. FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF ATLANTA v. COMMERCIAL UNION INSURANCE COMPANY OF N. Y.

ARGUED MARCH 8, 1967—DECIDED APRIL 5, 1967—REHEARING
DENIED MAY 22, 1967—

*Hatcher, Meyerson, Oxford & Irvin, Henry M. Hatcher, Jr.,* for appellant.

*Nall, Miller, Cadenhead & Dennis, Edward S. White,* for appellee.

DEEN, Judge. ■ The Dobbs & Company contract obligated it to collect rents, make disbursements relative to the building, including contracts for cleaning services, deduct its own commissions and expenses for the management of the building and remit the balance to the bank accompanied by proper receipted vouchers covering all expenses and disbursements. Over a period of months it failed to furnish vouchers but did attach a statement listing receipts and charges, together with bills marked "processed" but not otherwise shown to have been paid. Mr. White, comptroller and treasurer of the bank, and Mr. Kirk, its vice president, testified that they assumed this to mean the bills had in fact been paid by Dobbs. Most months during which the contract was in force collected rents were insufficient to cover expenses, and the bank would remit the balance to Dobbs.

On June 11, 1964, Building Maintenance, Inc. wrote Dobbs complaining of failure to pay its invoices going back to February, 1964, for cleaning done in the bank building, as to which the writer testified: "I believe I [sent a copy to Kirk] because when we were having these discussions I sent some blind copies to Mr. Kirk." Kirk denied positively having knowledge of the letter or these facts in June, 1964, but White, the treasurer testified that it "could be" the letter he saw in the summer or fall of 1964. Witnesses are not required to speak with absolute posi-

tiveness, but may testify as to their thought or belief. *Carter v. Ray,* 70 Ga. App. 419 (5) (28 SE2d 361); *Marshall v. Pierce,* 136 Ga. 543 (3) (71 SE 893); *Brinkley v. Bell,* 131 Ga. 226 (2) (62 SE 67); some uncertainty of memory goes rather to the credibility of the witness than to the admissibility of the testimony. The June 11 letter was properly admitted and constituted some evidence, especially when considered with other evidence of the discussions between the various parties, that the bank through one of its officers discovered facts in the midsummer of 1964 going back more than a year prior to the filing of the proof of loss which showed that the bills which Dobbs had contracted to pay on a monthly basis, and which the jury was authorized to find it had represented as being paid by the monthly statement transactions above referred to, had not been paid so that these transactions amounted to fraudulent or dishonest acts. In September, 1964, the bank received a letter from another contractor informing it that two small bills from June had not been paid, but that the account was current as of the date of the letter. Kirk was notified sometime in the fall of 1964 that bills for cleaning were three months in arrears, and called Dobbs, but was informed that there was a dispute as to the amount and made no further investigation. Kirk admitted that "if Dobbs and Company took rent money belonging to First Federal and certified that it had used that rent money to pay invoices shown on the monthly statement when it had in fact not done so . . . it would be a dishonest act." Other testimony pertains to the weeks immediately preceding plaintiff's notice to the defendant, which was followed by the proof of loss. In its totality it presents a jury question. The general rule is: "Whether the information possessed by the obligee amounts to actual knowledge of loss or wrongdoing or is merely a basis for suspicion is usually regarded as a question for the jury under proper instructions from the court, provided there is room under the evidence for any reasonable difference of opinion." 129 ALR, Anno., 1411, 1424 and cit. On the question of whether knowledge by White, if the jury should find he had such knowledge, is imputable to the corporate insured, see 23 ALR2d 1065, 1080. In the present case the name schedule bond was by its terms predicated on discovery

by "the insured or any officer thereof." There was sufficient evidence to support a jury inference that dishonest conduct by Dobbs had been discovered by officers of the insured prior to the loss for which this action is brought under the policy.

■ As to proof of loss, a fidelity insurance policy numbered 427960 covering named employees but restricted to natural persons was issued January 18, 1963. The name schedule bond listing Dobbs & Company for $10,000 coverage was issued in February, retroactive to January 18, and bore no number, although the insurance company carried it as 428060. A rider to policy 427960 was issued February 20, 1965, covering Dobbs & Company in the sum of $50,000, and this number was specified in the correspondence and proof of loss form filed by the bank. In its petition it claimed coverage under both policies, but the trial court properly directed a verdict against the plaintiff as to the $50,000 coverage, since a finding was demanded that the bank received a letter dated January 29, 1965, calling attention to the fact that invoices totaling $4,926.91 had not been paid, going back to September, 1964, and as the result of investigation had established that Dobbs had taken credit for over $18,000 in charges which it had not paid. Against this background the court instructed the jury that the plaintiff would not be entitled to recover any loss under the name schedule bond unless within four months after the discovery of such loss it filed with the defendant a detailed proof of loss as required by that bond. A proof of loss as required by the name schedule bond was in fact filed on April 6, 1965, and the issue was whether this was done within four months after the discovery of the loss, upon which issue the jury was properly instructed. The instruction: "Under the terms of the name schedule bond, the coverage of that bond came to an end immediately upon the discovery of Mr. Kirk or Mr. White, who were officers of the plaintiff, that Dobbs & Co. had committed a dishonest or fraudulent act" is perhaps ambiguous and is attacked by the appellant as an expression of opinion by the court that officers of the corporation had discovered a dishonest act and thereby ended the coverage prior to the loss on which this action is brought. But such a conclusion could hardly be reached by the jury. It is obvious

from a reading of the whole charge that the court was pointing out to the jury that coverage under the policy ceased when such discovery was made, and this point was made more than once. "A charge of a correct principle of law applicable to the case on trial does not constitute error requiring the reversal of the case as an expression of an opinion of what has been proved, under *Code* § 81-1104, where the whole charge when construed together shows that the matters assumed to be proven in the charge complained of were left to the jury on the question of whether or not such facts had been established by the evidence." *Gulf Life Ins. Co. v. Moore*, 90 Ga. App. 791 (1) (84 SE2d 696).

■ The instruction that the duty is on one injured by a breach of contract to use ordinary care to lessen his damages was abstractly correct. It was excepted to because there was "no evidence that after First Federal had suffered a loss it could have taken any action which could have lessened the damages which might have resulted to it," as to which the court replied that it was a standard Code section which he had merely charged in continuity. We are inclined to agree with both parties; nevertheless, not every Code section unsupported by evidence is reversible error when injected into a trial. The error, if any, was harmless. *Dill v. State*, 222 Ga. 793 (1) (152 SE2d 741). The remaining excerpts from the charge excepted to are without error.

*Judgment affirmed. Frankum, P. J., and Quillian, J., concur.*